O. E. BROWN, Receiver of Savings and Loan Association, Respondent, v. LASALLE ARCHER *et ux*, Appellants.

### Kansas City Court of Appeals, May 6, 1895.

1. **Usury: BONUS TO BORROWER'S AGENT: TO LENDER'S AGENT.** The borrower's agent may procure a loan for him and charge a bonus above the highest legal rate of interest and not taint the debt with usury, though the lender knows it. If the lender's agent exacts such bonus that, with the interest received, it goes beyond the lawful rates, but the lender has no interest in the bonus and no knowledge thereof, the loan is not usurious.

2. ———: BONUS TO LENDER'S AGENT: AGENT'S COMPENSATION. A lender can not put forward his agent to do a money loaning business for him with the expectation and knowledge that the agent should obtain from the borrower compensation for such services to the lender and escape the consequences of his agent's unlawful exac-

tions. And, where a loan association's general agent received his only compensation by exactions from borrowers over and above the highest legal rate, such loans are usurious.

3. **Building and Loan Associations:** CREDIT OF PREMIUMS. Certain monthly premiums paid to a building and loan association by the borrower, being usurious, should be credited, with the interest thereon, on the loan.

4. ————: PREMIUMS: STATUTE. Premiums to be protected under section 2814, Revised Statutes, 1889, must be ascertained under the provisions of section 2812, and the association can not fix a minimum premium for preference of loan, and such premiums, when so fixed, become usury.

5. ————: INSOLVENCY: STOCK CREDITS. In the settlement of the business by an insolvent loan association, the borrowing stockholder is not entitled to have his stock payments deducted from his debt to the association. Payments on the share of stock are not payments on the loan.

6. ————: ————: MARSHALING ASSETS. Insolvency of the association puts an end to its operation and nothing remains but to wind up its affairs without throwing on borrowers and nonborrowers more than their respective shares, which result may be reached by requiring the borrower to repay what he received with interest. Then, after payment of debts of the corporation, he would be entitled to a *pro rata* dividend with the nonborrower for what he has paid upon his stock.

7. **Usury:** CREDITS: COST. Under provisions of the usury law, as amended by the act of 1891, payments of usury are to be credited on the principal, and the cost of the suit must be taxed against the party who has exacted the usury.

*Appeal from the Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

REVERSED AND REMANDED (*with directions*).

*Grayston & Sheridan* and *M. G. McGregor* for appellant.

(1) Fraud will so affect the transaction that plaintiff can only recover the amount actually advanced with interest after deducting all monthly payments; and corporations are responsible for frauds of their

officers and agents. *Nelson v. Betts,* 30 Mo. App. 13, 14; 1 Addison on Contracts [7 Ed.], sec. 306, p. 446; sec. 309, p. 448; *Wannell v. Kem,* 57 Mo. 492; *Anderson v. McPike,* 86 Mo. 298; *Sherman v. Print. Co.,* 29 Mo. App. 38; *Alexander v. Relfe,* 74 Mo. 517; *Jackson v. Ins. Co.,* 27 Mo. App. 73, 74; *Mort. Sec. Co. v. Hendrickson,* 14 N. W. Rep. (Neb.) 519; *Sawyer v. L. & B. Ass'n* (Mich.), 40 Cent. Law Jour. 110. On the question of fraud the court will decide the case on the evidence, and consider the failure of the agent Clover to testify. *Dale v. Hogan,* 39 Mo. App. 648; *Benne v. Schnecko,* 100 Mo. 257, 258; *Diel v. Railroad,* 37 Mo. App. 459; *Henderson v. Henderson,* 55 Mo. 559. (2) Usury is to be credited as a payment on the principal and carries costs against party exacting it. A "premium" received monthly by the association and commissions or bonus by officers are usury by the association. Acts of 1891, p. 170; R. S., sec. 2812, p. 717; *Ferguson v. Soden,* 111 Mo. 215; *Drennon v. Dalincourt,* 56 Mo. App. 128; 2 Am. and Eng. Encyclopedia of Law, 628–631; *Bates v. S. & L. Ass'n,* 20 Cent. Law Jour. (Ohio) 384; Endlich on Build. Ass'n, secs. 347, 368, 378, 392, 393, 394, 397, pp. 342, 362, 374, 391–396; *Courtney v. Price,* 10 N. W. Rep. (Neb.) 698; *Joslin v. Miller,* 15 N. W. Rep. (Neb.) 214. (3) Knowledge acquired of the taking of usury by president or other officer is knowledge of the association, and the association is responsible for exactions by its manager and president. *Harrison v. Ins. Co.,* 8 Mo. App. 42; *Carroll v. Railroad,* 14 Mo. App. 490; *University v. Jordan,* 29 Mo. 70; *Bank v. Schaumberg,* 38 Mo. 228–244; *Bank v. Lovitt,* 114 Mo. 525; Wade on Notice [2 Ed.], sec. 683*b*, p. 391; 2 Cook on S. S. & Corp. Law, sec. 727 and notes, pp. 1114–1117; Abbott's Trial Ev. [1 Ed.], sec. 53, p. 45; *Sawyer v. L. & B. Ass'n* (Mich.) 40 Cent. Law Jour., *supra.* (4) An

agent receiving bonus in excess of lawful interest with knowledge of principal, or under circumstances from which the law will presume knowledge, the transaction is usurious, and the circumstances in this case show knowledge and participation by the association. *Payne v. Newcomb*, 100 Ill. 611 (39 Am. Rep. 69); *Banks v. Flint*, 10 Lawyers, Rep. Anno. (Ark.) 460; *Vahlberg v. Keaton*, 11 S. W. Rep. (Ark.) 880; *Joslin v. Miller*, 15 N. W. Rep. (Neb.) 214; *Stein v. Swenson*, 49 N. W. Rep. (Minn.) 55; *Cheney v. Woodruff*, 6 Neb. 151; *Cheney v. Eberhardt*, 8 Neb. 423 (1 N. W. Rep. 197); *Mort. Sec. Co. v. Harris*, 14 N. W. Rep. (Neb.) 471; *Eastman v. Shaw*, 65 N. Y. 522; *O'Neil v. Cleveland*, 30 N. J. Equity, 273. If Wannfried advanced his own money, or association furnished him money, or he had general powers to loan, then association or its receiver is in no better situation than if Wannfried was suing for money he had retained. *Olmstead v. Mort. Sec. Co.*, N. W. Rep. (Neb.) 650. (4) Appellant was entitled to be credited with his stock payments and the dividends thereon. By-laws of Association, secs. 44, 49, 51; 1 R. S., sec. 2813; Thompson on Build. Ass'ns, secs. 42, 47, pp. 88–93; Endlich on Build. Ass'ns, sec. 465, p. 472, and note; 2 Am. and Eng. Encyclopedia of Law, 625, 637.

*Adiel Sherwood* and *G. P. Whitsett* for respondent.

(1)    In liquidating their indebtedness to the association, the defendants are entitled to have credited upon the amount of their loan the sum paid by them on account of premiums, and interest on each payment of premiums, from the time of payment to the date of trial at the same rate of interest per annum as they have been paying the association on the money loaned them by the association, but they are not entitled to have cred-

ited upon the amount of their loan the sum paid by them on account of their monthly dues on shares of stock, commonly called stock credits. The amount paid by defendants as dues on stock stands to their credit on the books of the association until the time for final wind-up arrives, when they and all other stockholders, borrowers and non-borrowers will be paid *pro rata* from the fund for ultimate distribution. *Strohen v. Savings Fund & Loan Ass'n*, 115 Pa. St. 273; 2 Am. and Eng. Encyclopedia of Law, page 639; *Callahan's Appeal*, 124 Pa. St. 138; *Rogers v. Hargo*, 20 S. W. Rep. (Tenn.) 430. (2) The defendants are not entitled to credit for the bonus paid Wannfried as a consideration for his personal services in securing their loan from the association. The record shows that Wannfried had no authority from the association to receive or retain such bonus; besides, the amount so retained by him did not go into the funds of the association. *Fire-proofing Co. v. Bank*, 32 N. E. Rep. (Ill.) 534; *Landin v. Saxton*, 89 Mo. 375; *Muir v. Savings Institution*, 16 N. J. Eq. 537; *Tellours v. Longyer*, 91 N. Y. 324; *Estevez v. Purdy*, 66 N. Y. 446; *Acheson v. Chase*, 28 Minn. 211; *Association v. Ford*, 27 Conn. 282, 71 Am. Dec. 66. The employment of agent does not apparently nor impliedly authorize him to do an illegal act. *Sniffen v. Koechling*, 45 N. Y. Supt. Ct. (Jones & Spencer, 61); *Gokey v. Knapp*, 44 Iowa, 32; *Palmer v. Call*, 2 McCrary, 522; *Stillman v. Northrup*, 109 N. Y. 453; *Baldwin v. Doying*, 114 N. Y. 453. (3) The question of usury is not involved in this case. The statute of this state exempts building and loan associations from usury in charging a premium, so that when the cost of money by the addition of the premium to the interest is increased beyond the legal rate, there is no usury. The legislative intention in allowing premiums was to confer on the association an equitable

and profitable method of selecting its borrowers. Thompson on Building Associations, pp. 103, 104; R. S. 1889, sec. 2814: *Callahan's Appeal*, 124 Pa. St. 138; *Reeve v. Building Ass'n*, 19 S. W. Rep. (Ark.) 917; Tyler, Usury, 98; *Loid v. Scott*, 4 Peters, 205; *Parker v. L. & B. Ass'n*, 46 Ga. 165; *Hammerslaugh v. B. & L. Saving Ass'n*, 79 Mo. 80; *Mass v. B. & L. Ass'n*, 22 Kan. 624, 635; *Delano v. Wild*, 83 Am. Dec. 605, 611; *Merrill v. McIntire*, 13 Gray, 157; *McLaughlin v. Citizens' Ass'n*, 62 Ind. 264.

ELLISON, J.—Plaintiff, as receiver of the Home Savings and Loan Association, of St. Louis, is seeking to foreclose a mortgage executed by defendants to such loan association, to secure the payment and performance of the following contract:

"$600.          ST. LOUIS, Mo., August 1, 1891.

"Received of Home Savings and Loan Association, of St. Louis, Missouri, six hundred——dollars, as a loan on six shares of stock, No. 15960, owned by me in said association, and I, Lasalle Archer, agree to pay to said association on the twentieth day of each month, at the office of the association, St. Louis, Missouri, eleven and 10-100 dollars, which shall be applied as follows: *First*. To the payment of any fines or other assessments made against me in pursuance of the by-laws of said association. *Second*. To the payment of the premium for precedence due on said loan, amounting to three and sixty hundredths dollars per month. *Third*. To the payment of the interest due on said loan, amounting to three and sixty hundredths dollars per month. *Fourth*. The balance of said payments shall be credited as dues on said stock. Said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned.

"Should I fail for twelve weeks to pay said monthly payments, then the whole amount of said loan shall at once become due and payable. It is hereby mutually agreed that this contract and the mortgage securing the same are made and shall be construed agreeably to the laws of the state of Missouri, and that this provision shall not be waived except by stipulation of the parties in writing over the signature of the secretary and the corporate seal of said association.

"(Signed)    LASALLE ARCHER,
"(Signed)    ALICE ARCHER."

The answer of the defendants pleaded usury by setting up facts which will be noted further on. The reply was a general denial. The judgment was for plaintiff, on a trial before the court without a jury.

It appears from the evidence that for some time before and after the loan in controversy was made, the loan association had an office in Joplin, Missouri, wherein was located one Wanfried, and Clover, his clerk. Wanfried was the general manager of the association, as well as a director therein. These two representatives of the association figure most prominently in the record here, though J. R. Hoff, the president of the association, and who, we gather, was at the association's office in St. Louis, also finds a place in the facts connected with the transaction. The defendants resided at Joplin, and having an incumbrance of about $150 on their home property and needing some money in addition, applied to Wanfried for a loan of $400. They made a written application for the loan, finally obtained, in the following words:

"APPLICATION FOR LOAN.

"The undersigned having made application to the Home Savings and Loan Association of St. Louis, Missouri, for a loan of $600, on the security of lot 4

and the south half of lot 5, Gray's 2d Add., through T. D. Wanfried, does hereby agree to furnish at his own expense, a complete abstract of the title of said property and to pay for the acknowledging and recording of all necessary papers.

"Said Lasalle Archer does further agree to pay to said T. D. Wanfried the sum of $200, in payment of all other expenses for procuring and closing said loan, such as appraiser's fees, attorney's fees, commissions and executing mortgage, note and certificate of stock.

"Should said loan be approved by said Home Savings and Loan Association, and the title prove defective, the said Lasalle Archer agrees to perfect the same at his expense, and if that can not be done, then said T. D. Wanfried shall be entitled to said sum of $200 as though the loan had been made.

"The performance of this agreement on my part, shall be secured by, and said sum payable to, said T. D. Wanfried, to be a lien against said real estate.

"Witness my hand and seal this first day of August, A. D. 1891.

"(Signed)      LASALLE ARCHER.    [SEAL]"

It will thus be seen from the contract, which we have already set out, and this application, that while defendants only desired $400, they became obligated for $600, the difference between the two amounts going to Wanfried, for the purpose, as stated, of paying expenses of appraisers, attorneys, commissions, etc. But in addition to this, Clover, the clerk, took out of the loan $20 for "his commission." The evidence shows that only nominal sums were paid out by these parties —nothing of consequence. The evidence fails to show that there was anything more than the most ordinary service required or performed in arranging the loan. There was thus left to defendants the sum of $380 to represent the net benefit to them of the obligation for

$600, and on which they were to pay $11.10 per month, and did pay that sum for twenty-five months, and yet were owing at the time of trial, if the judgment is to stand, the sum of $530.40—the trial court having refused to allow a credit of the sums paid these parties and having held there was no usury in the entire transaction.

The question of usury is divided, under the facts disclosed by the record, into two branches. The first relates to the bonus received by Wanfried, saying nothing of Clover. The second relates to the question of premiums.

I. The evidence discloses, as before stated, that Wanfried was the general manager of the loan association and a director; that he took loans for the association at Joplin and had printed blanks therefor; that these loans were sent into St. Louis with Wanfried's approval, when they were approved there also; that if a draft was not sent by the loan association for the sum loaned, Wanfried drew on the association for the amount —at least he did so in this instance. *He received no salary or other compensation from the loan association;* his compensation was obtained through and from the borrowers; orders on the company being given to him by the borrowers directing the company to pay him out of the sum borrowed. He stated in his testimony that he always took care of himself—his "humble self;" that he didn't keep as much out of this loan for himself as he had out of some others; that sometimes he kept out one half. In testifying as to this, he said that it depended on circumstances. "When I considered that a man or woman came to me as a last resort, I made them pay for it." He testified that he paid Hoff, the president, $100 per month. Said he did not pay him this as president of the loan association, but "I paid him because of his agreeing with me that he would

approve any loan that I submitted to him." In making loans generally, he sometimes sent the orders to him from borrowers, for his share, into the association at St. Louis. In this instance he did not, though he says Hoff saw it. If he kept the orders, he had them as vouchers in his settlements with the association. These facts, appearing from Wanfried's testimony (Clover, though present at the trial, not testifying) are sufficient, without the necessity of going to the testimony of the two defendants, to apply the proper principles of law to a case of this kind. From these facts, it is clear that Wanfried was the general manager of the corporation and was its general agent to obtain loans generally, according to the object of the association. That the corporation paid him no salary, and that the corporation knew of his outrageous exactions from needy borrowers, although no part of it went into the treasury of the association. It knew this from the fact that, not paying Wanfried itself, it must have known the borrower did. Therefore, he was sent forth by the corporation, commissioned by it to get his compensation for services performed for the corporation, from the borrowers. It further must have known it, through the fact that he held his orders from the borrowers to the company, as vouchers in settlements with the company, to say nothing of what Hoff, the president of the association, knew.

The law is that an agent of the borrower may procure a loan for him and charge him a bonus over and above the highest legal rate of interest which he may pay the lender, and yet not taint the debt with usury, even though the lender knows the borrower is to pay the bonus. And it has been often held that if the lender's agent exacts a bonus from the borrower, which, together with the interest received, goes beyond the lawful rates, but in which the lender has no interest,

and of which he has no knowledge, the loan is not usurious.

These two propositions are not involved in the question for decision here, and we state them more to make clear the extent of our meaning on the question as presented.  The question here was not involved in *Landis v. Saxton*, 89 Mo. 375, and like authorities.  The question here is this:  Can a lender put forward his agent to do a money loaning business for the lender, with the expectation and knowledge that the agent would and did obtain from the borrower the compensation due him for such service to the lender, and yet escape the consequences of his agent's unlawful exactions?  We think he can not.   It is nowhere denied that if the lender participates or shares in the bonus, either by taking it himself or receiving it from his agent, the contract is usurious.   And yet it is no less than this when the lender so shapes the agency of his agent that the borrower pays for the agent's services to the lender. The agent is entitled to compensation.   That compensation is an obligation of the principal to the agent.  If such obligation is paid by the borrower to the agent, it is nothing less, in effect, than if paid to any other servant who served the principal, or to the principal himself. What would be thought of the suggestion that a bank could employ a cashier without salary, but with the understanding that he should obtain his compensation by charging a bonus to borrowers of the bank, over and above the highest legal interest, and yet not taint such loans with usury?  Such suggestion would be scouted by any reasonable man.   Yet, that is no more than what this case amounts to.  Here Wanfried is the general manager of this loan association, and is put in charge of making loans for the association in Jasper county. It was his duty to look after the interest of the association with industry and fidelity, to take care of such

interests, and to pass upon the loans proposed (at least, in the first instance). He *took* loans for the *association*, and did not procure them for borrowers; and he obtained his compensation for this service by exactions from the borrower. The association was thus relieved of the expense of paying what otherwise it necessarily must have paid for. Under such circumstances, the lender is aware of the acts of the agent, and is to be charged with such acts; and if the exaction of the agent is sufficient, together with the interest reserved to the lender, to take it beyond a lawful rate, the loan will be usurious. *Payne v. Newcomb*, 100 Ill. 611; *Ammondson v. Ryan*, 111 Ill. 506; *Cox v. Ins. Co.*, 113 Ill. 382; *Meers v. Stevens*, 106 Ill. 549; *Vahlberg v. Keaton*, 51 Ark. 534; *Thompson v. Ingram*, 51 Ark. 546; *Bank v. Flint*, 54 Ark. 40; *Rogers v. Buckingham*, 33 Conn. 81; *Ginn v. New Eng. Mort. Co.*, 92 Ala. 138; *Borcherling v. Trefz*, 40 N. J. Eq. 502; *Sherwood v. Roundtree*, 32 Fed. Rep. 113; *Call v. Palmer*, 116 U. S. 98; *Meago v. Simmons*, 22 Eng. C. L. 486.

Several of the foregoing cases are of great similarity to this one. They are based on the plainest principles of common sense and sound reasoning. It was said by the supreme court of Maryland, in *Andrews v. Poe*, 30 Md. 485, that every device and shift which the wit of man could suggest had been invoked to exempt contracts for illegal interest from the operation of the law, but that courts should look under the mask to discover the true nature of the real transaction.

Since it was not necessary, in order to dispose of this branch of the case, we have avoided the question whether, as Wanfried was the general agent and manager of the association for making loans, the association should not be charged with whatever he did in and about consummating loans, whether known to the asso-

ciation or not. Counsel have cited authority to that effect, but the question does not arise here.

II. On the question of monthly premiums paid by defendants, we agree with the trial court that defendants should be credited with those payments and interest on them, at the rate they were paying on the loan. *Strohen v. Franklin Sav. & L. Ass'n*, 115 Pa. St. 273. But, in addition, were they not usury? We think they were, and the court should have so held. Our statute, section 2814, Revised Statutes, 1889, declares that: "No premiums, fines, or interest on such premiums that may accrue to the said corporation, according to the provisions of this article, shall be deemed usurious, and the same may be collected as debts of like amount are now by law collected."

But the premiums collected of these defendants were not such as are provided by that article, and they are, therefore, usurious, since they, connected with the interest of seven and twenty hundredths per cent., exceed the lawful rate. The statute provides for premiums in section 2812, where it is provided that the money determined by the directory to be loaned shall be offered to the shareholders in open meeting, and that the shareholder who shall bid the highest for the preference of the loan shall be entitled to receive it. In this case, no proceedings of this nature were had. Instead of this statutory mode of ascertaining what the premium would be in making loans, the directory seems to have adopted an arbitrary sum as a fixed premium. This will not do. The amount charged here as a premium was usury, unless it be exempted by the statute, and, as we have seen, the statute only exempts it when it has been charged in the manner provided. This question was determined, as we here determine it, by the supreme court of Ohio. *Bates v.*

*People's Loan Ass'n*, 42 Ohio St. 655. The directory can not fix a minimum premium for preference of loan, under which the member can not borrow. *Ohio v. Greenville B. & L. Ass'n*, 29 Ohio, 92; *State v. Building Ass'n*, 35 Ohio St. 258. In the *Greenville case*, the court said, that the most valuable right a member acquired by his membership was that of obtaining a loan of money, with privilege of paying in short installments; and that the board of directors had no power to refuse loans to members, except upon payment of minimum premiums. That the preference or right to a loan should be given to him who will pay the highest premium, whether that be great or small. That such mode was the "only mode known to the law by which the premiums upon loans could be fixed or determined." SHARSWOOD, C. J., said in *Stiles' Appeal*, 9 W. N. C. (Pa.), that these associations "are bound to offer all that is in the treasury to open competition; so that the members may obtain the loan at a low premium, if there should be no bid at a higher.   *  *  * This is a most valuable feature in such associations, and hence the importance of maintaining the principle of free competition in the bids." It follows that, if the association can not charge a fixed premium, without competition among the members, that the premium charged in this case was unauthorized. It must, therefore, be held that it became a charge for the use of the money, without the protection of the statute, and is usurious. The argument advanced and the authorities cited for the plaintiff, in which the nature of the organization of these associations is dwelt upon, wholly fail to meet a case such as this, where the premium charged was unauthorized and wrongful. It is, of course, conceded, that, if the premiums had been exacted in accordance with the power conferred by the statute, that then, under the protection of the statute

itself, they would not have been usury, though exceeding the highest rate of interest.

III. The remaining question in the case is whether the defendants are entitled to be credited with their monthly payments on the stock subscribed by them. The trial court held not, and we think properly so held. The evidence showed the association to be utterly and hopelessly insolvent; that there would be no profit or surplus to be divided among the stockholders. It should be borne in mind that a shareholder in this association, in case it prospered, would reap advantages and profit therefrom. So, in case of disaster, he must expect to bear the loss, total or partial, of his stock. If the borrowing stockholder is entitled to have his payments on stock to be credited on the claim against him for money advanced to him on the faith of the stock, he will obtain an unfair advantage over the non-borrowing stockholder. The non-borrower pays for his stock and, in case of insolvency of the institution, loses it. Ought the borrower to be in any better position? We think not; though there is authority supporting the proposition that he is entitled to the credit. The argument advanced by defendants is that, since, under the by-laws of the association and the statute, a shareholder is entitled to have his obligation or loan canceled, when the stock payments and dividends equal the amount of the stock, he should have credit for the proportion he has paid. But this provision in favor of the stockholder contemplates a solvent concern. It can not mean that when it becomes insolvent, such shareholders as happen to be borrowers shall escape the usual losses which attach to those who fail in their enterprises. Defendants, when making payments on their shares of stock, were not paying on the loan. The provision of the by-law is, that when payments for stock shall be continued

until they shall equal the amount loaned, the loan and the stock upon which it was taken shall both be canceled and the borrower's mortgage released. The payments are made on the stock, and, when certain conditions transpire, they are applied in extinguishment of the loan. But here, as before stated, the association has become insolvent during the existence of the loan to defendants. The effect of the insolvency is to put an end to the business of the association; and from the very nature of the organization and its object, must arrest the operation of much of the contracts it has with members. In *Strohen v. Franklin Loan Ass'n*, 115 Pa. St. 273, it is said: "The insolvency of the company, as before observed, puts an end to its operations as a building association; to a certain extent, it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors, and between the members themselves. As regards the latter, care should be taken to adjust the burdens equally, and not to throw upon either borrowers or non-borrowers more than their respective share. The result may be reached by requiring the borrower to repay what he actually received with interest. He would then be entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the non-borrower for what he has paid upon his stock. He will thus be obliged to bear his proper share of the losses. To allow him to credit upon his mortgage his payments on his stock, would enable him to escape responsibility for his share of the losses, and throw them wholly upon the non-borrowers. In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner." That case was fully considered by the supreme court of Tennessee in *Rogers v. Hays*, 92

Tenn. ——, and the reasoning, with the conclusion therein, adopted. To the same effect, see *Callahan's Appeal*, 124 Pa. St. 138.

IV. Under the provisions of the usury law, as amended by Acts, 1891, page 170, payments of usury are to be credited on the principal, and the costs of suit must be taxed against the party who has exacted the usury. The result of our decision, therefore, is, that we will reverse the judgment and remand the cause, with directions to the circuit court to enter judgment for plaintiff for balance which may be due, after deducting from the $600 named in defendant's obligation, the sum of $200 paid Wanfried, and $20 paid Clover; to be deducted as of the date of the loan; thus leaving $380 to draw interest from date at the rate agreed, seven and twenty hundredths per annum; deduct, also, the premiums paid, with interest added on each, at the rate of seven and twenty hundredths per cent. per annum; and tax the costs against the plaintiff.

All concur.