WILLIAM F. EDINGER, Appellant, v. MISSOURI GUARANTEE SAVINGS AND BUILDING ASSO-   . CIATION, Respondent.

83   615
92   489

St. Louis Court of Appeals, March 27, 1900.

1. **Building and Loan Association: COMPETITIVE BIDDING:** SECTION 2812, REVISED STATUTES, 1889.  The evidence shows that the element of competitive bidding did not enter into the bid made by appellant, and that the loan for that reason was not made in compliance with section 2812, Revised Statutes 1889.

2. ———: ———: LOAN, USURIOUS.  The loan not being competitive, the premium is not protected by section 2814, Revised Statutes 1889, and should be credited to interest on the loan, and the loan pronounced usurious.

3. ———: ———: ENTITLED TO WITHDRAWAL OF STOCK, WHEN.  To be entitled to a withdrawal of stock and recover its value, the pledge, or loan for which it was pledged, must be paid, or the borrower must continue to pay the monthly dues until the stock has reached par value before he can receive, or have its value applied to his credit on the note.

4. ———: ———: USURY STATUTES: BENEFITS: ACCOUNTING.  There should have been an accounting; appellant is entitled to the benefits of the usury statutes in finding the balance due on the deed of trust, and to withdraw his free stock, and have its value applied on his debt as a credit.

5. ———: ———: A BID DEFINED. A bid is an offer at an auction sale to pay a certain price for the property on sale—the substantial thing is the bid, and whether made orally or in writing, if in fact it is made and treated as a bid in competitive bidding, and the money is knocked off to the person so filing a written bid, every purpose of the law is met.

Appeal from the Jefferson Circuit Court.—*Hon. F. R. Dearing,* Judge.

Reversed and remanded.

*John L. Thomas & Son* for appellant.

(1) The court clearly erred in not taking an account between appellant and respondent and stating the balance due one way or the other. The appellant had asked for an accounting, but the court, when it determined that the premiums paid could not be credited on the loan, dismissed the bill. For this error the judgment of the trial court must be reversed. (2) The court erred in holding that the premium paid by appellant was rated as a premium, and should not be credited on the loan. This loan was not offered "to all the members in open meeting" of the directors of the association as required by section 2812, Revised Statutes 1889, and hence it was not rated as a premium and should be credited on the loan. Price v. Association, 75 Mo. App. 551; Moore v. Association, 74 U. S. 468; Brown v. Archer, 62 Mo. App. 277. The first case above cited is precisely on all fours with the case at bar. (3) As all the facts are presented by the record, we ask this court to take an account as prayed by appellant in his petition, and to direct the circuit court what judgment to render. (4) But if the court should hold the transaction usurious, which we feel confident it will do, in the adjustment of the accounts between the parties, interest at six per cent per annum only can be allowed respondent. Sec. 1, Act of April 21, 1891 (Sess. Acts 1891,

MARCH TERM, 1900. 617

Edinger v. Mo. Guar. Sav. Bldg. Ass'n.

p. 170; sec. 3709, R. S. 1899); 4 Am. and Eng. Ency. of Law [2 Ed.], p. 1072. And in that case appellant is entitled to have the sums he paid monthly as interest and premiums credited on the debt as of the dates of payments. (5) The Act of 1895 (see Acts of 1895, p. 105), cited by respondent, does not purport to have a retroactive operation, as was the case of the Iowa statute construed by the court in Assn. v. Hiedt, 77 N. W. Rep. 1050 (43 L. R. A. 689). The court in the Iowa case specifically refused to hold a section of the statute of that state retroactive, "where the law is not made expressly retroactive," but another section which is expressly made retroactive the court did uphold. The Iowa court, however, in support of the doctrine on this point, it lays down, cites Iowa cases only, while the weight of authority is the other way, even where the statute purports to be retroactive in express terms. Lindsay v. U. S. Sav. & Loan Co., 42 L. R. A. 783. The act of 1895, in all its sections, is prospective only, and it can not therefore have a retroactive operation. End. B. & L. Association [2 Ed.], sec. 43.

*James F. Green* for respondent.

(1) The judgment of the circuit court was the proper one to enter under the pleadings and the evidence. The court having found that the transaction was not usurious, the only judgment authorized was one dismissing plaintiff's bill, as he was not entitled to an accounting, the debt not being due. Brown v. Archer, 62 Mo. App. 291; Fisher v. Patton, 134 Mo. 32. (2) Plaintiff was not entitled to withdraw from the association, nor to have an accounting, as the evidence showed that his stock had not matured. Bertche v. L. & V. Assn., 147 Mo. 343; Sweeney v. B. & L. Assn. (Tex.), 26 S. W. Rep. 292; Abbott v. B. & L. Assn., 85 Tex. 220; 20 S. W. Rep. 118; Session Acts of Mo., 1895, p. 105, sec. 15. (3) The loan to plaintiff was not usurious, because

made to him on his bid, in strict compliance with the statute. R. S. 1889, sec. 2812; Session Acts 1895, p. 108, secs. 7 and 9; Brown v. Archer, 62 Mo. App. l. c. 290; Hughes v. F. S. & Bldg. Assn. (Tenn.), 46 S. W. Rep. 362; Springfield Eng. & T. Co. v. Donovan, 49 S. W. Rep. 500.

BLAND, P. J.—This was a proceeding in equity, instituted by appellant in the circuit court of Jefferson county, against the respondent, alleging that he procured a loan of $800 from respondent in April, 1892, on the terms that he was to pay monthly $4.80 as interest, $3.20 as premium, and $4 as dues for one hundred months, when the debt would be liquidated; that this loan was not awarded to him as a stockholder in the respondent corporation by bidding in open meeting, as required by statute, but the premium was exacted of him in an arbitrary way, and hence made the transaction usurious, as the interest with the premium made a greater rate of interest than the law allowed.

Appellant further alleged that he had in respondent association two certificates of stock, one for $200 and one for $800 that the certificate of $800 was pledged to secure said loan, while the certificate for $200 was free, and that he had paid respondent on his free stock, under the terms of his loan, which was secured by a deed of trust on his real estate in De Soto, $1,067, which fully paid the whole sum due with legal interest, and prayed the court to take an account and ascertain the balance due appellant, and to compel respondent to enter satisfaction of the loan and the deed of trust and for other relief.

The answer admitted the issuance of certificate of stock No. 4547, dated November 2, 1891, denied its loss, and averred that it was pledged to secure the loan to plaintiff of $800, and that said loan was secured by deed of trust on plaintiff's real estate in De Soto, Missouri, and denied all other allegations.

It is further alleged in the answer "that appellant is a stockholder in the association and that he was not warranted in withdrawing from it until his stock had matured; that the stock had not matured, and that appellant owed the respondent company on account of the loan the sum of four hundred and fifty-eight dollars and eight cents."

There was a reply putting at issue the affirmative allegations of the petition.

At the trial the evidence showed that on November 2, 1891, the appellant subscribed for one thousand dollars worth of stock in the respondent association, for which he paid ten dollars as an entrance fee, and agreed to pay five dollars per month as dues thereafter until the stock was matured.    He paid thirty dollars in dues on this stock, and then, in the latter part of April, 1892, he borrowed $800 from the respondent, and the certificate of stock was credited with $200, leaving $800, which was pledged to secure the loan, and respondent issued another certificate of stock to appellant for $200.    The appellant testified, and this was all the evidence on that point, that the agent of respondent informed him in De Soto that he could have a loan from the association of $800 by paying as premium $4.80 as interest, $4 as dues, and $3.20 as premium per month for one hundred months, and presented him a blank form of application for the loan, and this premium was inserted in the blank form and as the agent had instructed; that he never applied in open meeting at any time or place, to bid for the loan or for any other purpose, but the loan was awarded to him by the association on his written application prepared at De Soto.

The evidence showed also that appellant since the loan was made, had paid $1,070 on the loan and on his free stock of $200, and that he had in due form given notice to respondent of his demand to take the withdrawal value of his loan and free stock before the institution of this suit, and that the withdrawal value for the loan was as follows:

☞ "I hereby make application in the Missouri Guarantee Savings and Building Association, of Hannibal, Mo., for a loan of eight hundred dollars ($800), and state the following facts:

"1.  My name in full is William E. Edinger.

"2.  Wife's name or husband's, Mary W. Edinger. Age 36 years.

"3.  My postoffice address is...street and number.... town or city of De Soto, county Jefferson, state Missouri.

"4.  I hold one thousand ($1,000) dollars of stock in this association.

"5.  My certificate of stock is number 4547, and bears date November 2, 1891.

"6.  My occupation is real estate and insurance agent.

"7.  Age 36.

"8.  The correct description of the real estate on which I desire a loan, and as found in the title papers, and as it should be in the mortgage to be executed by me is as follows:

"Lots 13 and 14, in block 14, of Rathburn & Donaldson's addition to the city of De Soto.

"The appellant agrees to pay interest on the amount of the loan applied for at the rate of six per cent per annum. To procure said loan I bid as a premium for the preference and priority of said loan 40 per cent per annum on the amount so loaned me.  Both interest and premium shall be due and payable monthly."

The appellant read in evidence the items in a book which were admitted to be correct showing the sums paid on his stock.  These items showed that he paid $5 a month from November, 1891 to May, 1892, and paid $13 per month for eighty months from May, 1892 to December, 1898, inclusive, $1,070 in all.

Appellant also read in evidence the obligation he had executed to respondent which is as follows:

"De Soto, Mo., April 28, 1892.

"Note of Obligation:

"For value received I promise to pay to the order of the Missouri Guarantee Savings and Building Association, of Hannibal, Mo., the following sums of money, viz.:   The sum of $4, the same being the monthly dues or installments on certificates No. 4547, for $800 of stock in said association this day pledged by me to said association to secure a loan of $800, and the sum of four and eighty one-hundredths dollars, the same being the interest due monthly upon said sum so borrowed by me, and the sum of three and twenty one-hundredths dollars, the same being premium for the preference and priority of loan due monthly on said sum so borrowed, and I promise to pay said association all of said sums of money amounting in the aggregate to $12 on the twentieth day of each and every month for one hundred months from the date of the first payment of dues on certificate of stock above mentioned, and I further agree in case of default in the payment of said sums of money monthly, to pay all fines and penalties assessed on account thereof in accordance with the rules and regulations of said association, and in case of default, the stock pledged and the security given to secure said monthly payments shall upon sale thereof be insufficient to repay said association any balance which may be due and owing on said loan, I promise and agree to fully pay and discharge the same.   The payment of said monthly sum of $12, for the full period of said one hundred months, and of all fines and penalties, shall entitle said stock to redemption by said association at the par value of $800, and the said stock so entitled to redemption shall at the end of said one hundred months be taken and cancelled by said association in full satisfaction of this obligation, and of the deed of trust given to secure the same, in consideration of which said redemption of said stock, and the satisfaction of this obligation, and said deed of trust at said end of one hundred

months, I hereby waive and release all other and further right, interest or benefit, in or to the profits or earnings of said association, and hereby transfer and assign the same to said association.

"William F. Edinger."

Appellant also read in evidence section 6 of respondent's by-laws, which read as follows:

"If a member dies, his legal representative may withdraw his stock, and in case of such withdrawal, shall be entitled to receive the full amount of the monthly dues paid on his stock with 8 per cent interest for the average time the same has been invested. Stock withdrawn under this section shall be charged its equitable divisions to the expense fund. In no other case can stock be drawn until after one year from the date certified, provided that the association may require thirty days notice to redeem withdrawn stock. At any time after one year, stock may be withdrawn and the stockholder will be entitled to receive the dues paid by him into the association, together with interest at the rate of 8 per cent per annum for the average time. After the stock has been in force two years, it may be withdrawn and the member be entitled to receive the dues paid by him into the association, and one-half the profits of said stock up to the date of the withdrawal. After the stock has been in force four years, the stockholder may withdraw his stock and be entitled to receive the dues paid into the association and 25 per cent of the net proceeds on said stock. Withdrawn stock may be paid for in the order in which notice is given but the association will not, without the consent of the board of directors, issue more than one-half of the money received from the monthly payments in any one month in payments of withdrawn members."

Respondent read in evidence the following record of its board of directors:

"Hannibal, Mo., April 28, 1892.
"Meeting of the Board of Directors, President:

There were present, J. H. Garth, A. R. Levering, L. P. Monger, C. T. Hayward, S. M. Carter, J. H. Greening and Herbert Horace, directors. The association having funds on hand to loan and the following named persons having offered sufficient security, and being the highest and best bidders, were awarded the amounts set opposite of the names subject to the approval of their abstracts by the general attorney. L. A. T. Campbell, $2,000; Ada Bell, $400; J. H. Sudoth, $500; Wm. E. Atterberry $300; Willis E. Jones, $600; John A. Tyler, $700; Henry S. Thopp, $300; Archer Bresse, $600; Andrew Bell, $500; Wm. J. Grimes, $500; W. H. Carney, $250; Wm. McGhee, $400; Wm. F. Edinger, $800; C. W. Nance, $300; W. T. Davis, $300; Thos. A. and Hester A. Jones, $500; Henry S. Stewart, $300; Stephen H. Allen, $400; P. F. Ball and Geo. H. Moors, were referred to A. R. Levering for investigation."

The secretary of the respondent testified that the certificate of stock for $1,000 issued to appellant November 2, 1891, was reduced to $800 when appellant made the loan and pledge to the company as security for the loan, and a free certificate (one not pledged) was issued to appellant for $200; that at the time this division was made appellant had paid $30 on the $1,000 certificate; that $24 of this payment was credited to the $800 certificate and $6 to the $200 certificate; that after this, appellant, until he quit paying, paid $4 per month dues on the $800 certificate and $1 per month on the $200 certificate, and $8 per month as interest and premium on his loan of $800; that on February 2, 1899, the withdrawal value of the $800 certificate was $349.92 and of the $200 certificate, $87.48; that appellant had paid $344.92 on the $800 certificate, and that it had earned $5.92. On January 23, 1899, appellant duly served notice on respondent of his withdrawal of his stock in the association.

The learned circuit judge found that the contract was not usurious, and dismissed plaintiff's bill, from which judgment plaintiff duly appealed.

1. The appellant's contention is that the loan was not offered to all the members of the association in open meeting of the directors, as required by section 2812, Revised Statutes 1889, and for this reason no premium rate could be charged, and that what was received and credited as premiums on the loan was usurious interest and should be credited against the principal of the note, and that only 6 per cent interest should be allowed. The argument is that there was no bid made by appellant for the loan, for the reason he was not present in person at any meeting of the board of directors to make a bid. We can not agree to this proposition. "A bid is an offer at an auction sale to pay a certain price for the property on sale." Abbott's Law Dictionary. An offer may be made as well in writing as orally, and where there are a number of bids in writing for the same property that is offered at auction, unless they all bid the same amount on like terms it can not be said there were no competing bids at the sale. In Hughes et al. v. Savings Building and Loan Association, 46 S. W. Rep. 362, the court of chancery appeals of Tennessee, speaking of a written bid made under a statute similar to our section 2812, Revised Statutes 1889, said: "The substantial thing is the bid, and whether made orally or in writing, if in fact it is made and treated as a bid and in competitive bidding the money is knocked off to the person so filing a written bid, every purpose of the Acts of 1875 and 1889 is met." Barnes v. Mo. Guarantee Savings and B. Association, vol. 3, No. 6, Mo. App. reporter 283. This ruling is in consonance with both reason and practice. It is further insisted by appellant that admitting that a written bid does answer the requirements of the law, the evidence shows there was no competitive bidding for the loan. The record of the board of directors made at the time the loan was awarded

MARCH TERM, 1900. 625

Edinger v. Mo. Guar. Sav. Bldg. Ass'n.

recites, that appellant made a bid, that his bid was one of the highest and best, and that the loan was awarded on his bid. If this record was clothed with absolute verity, it would put an end to this controversy, but it is not, and the true character of the transaction may be inquired into, notwithstanding this record, and if the facts contradict the record, the truth will prevail over the record.

From the testimony of appellant it is clear that he did not understand that by his written bid he was competing for the loan with other stockholders; on the contrary he understood that he was making a written application to respondent for the loan on the lowest terms the respondent would make it. He says the agent of respondent, Mercer, who sold him his stock in the company, told him the terms upon which he could borrow money from respondent, and that when the application was made out the agent wrote out what should go in the application, and that the application was written, either by the agent, or as he directed, and that the agent furnished the blank form for the bid or application to him; that after being prepared as the agent directed, the application was forwarded to the home office. Appellant's testimony as to these facts is not contradicted by any witness. He says he made no bid, and from his testimony it is clear that he did not. By sending out an agent, with authority to sell stock, and supplied with blank forms or applications for loans, with information or instructions by which the agent was authorized to inform appellant of the terms on which loans could be had, as was done in this case and the making of the bid according to these terms, eliminates entirely the element of competitive bidding from the transaction. The loan was not made in compliance with section 2812, Revised Statutes 1889. Price v. Association, 75 Mo. App. 551; Moore v. Association, 74 Mo. App. 468; Brown v. Archer, 62 Mo. App. 277; Post v. Mechanics B. & L. Ass'n, 37 S.

Vol. 83 app—40

W. Rep. 216; Douglas v. Kavanaugh, 90 Fed. Rep. 373. The premium is not protected under section 2814, Revised Statutes, 1889, and should be credited to interest on the loan, and the loan pronounced usurious. Brown v. Archer, 62 Mo. App. 277; McCauley v. B. & L. Ass'n, 37 S. W. Rep. 212; Douglas v. Kavanaugh, *supra.* The loan being usurious, was the plaintiff entitled to the relief prayed for? According to the terms of his contract, and under respondent's by-laws he was privileged to withdraw from the association and have an adjustment of his standing with it at the time he gave notice of his withdrawal. Unless therefore there is some controlling statute or some underlying principle of law which nullifies this much of the contract, the contract must govern. Section 2810, Art. 9, Revised Statutes 1889, concerning mutual associations, provides, among other things, that "any shareholder, or the legal representatives of any deceased shareholder, wishing to withdraw from said corporation, shall have power to do so, by giving thirty days' notice of such intention. * * * No shareholder shall be entitled to withdraw whose stock is pledged as security for a loan. * * *." Section 2813 of the Act provides "a borrower may pay a loan at any time." The appellant gave the thirty days' notice required by section 2810 of his withdrawal, and it was the plain duty of respondent, at the next meeting of its board of directors, to have awarded him the amount he had paid on his free stock of $200 and its proportions of earnings; but not so with the pledged stock; to be entitled to a withdrawal of this stock and to recover its value, the appellant must first redeem it from the pledge, or continue to pay his monthly dues until the stock has reached par value before he can receive or have applied its value to his credit on the note. Bertche v. Equitable Bldg. & Loan Ass'n, 147 Mo. 343. The Act of 1895, concerning building and loan associations, has no application to this case; the Act

can not have retrospective force. Bill of Rights, sec. 15. There should have been an accounting. Appellant is entitled to the benefits of the usury statutes in finding the balance due on the deed of trust, and he is entitled to withdraw his free stock and have the value of that applied as a credit on his debt. That this may be done, the judgment is reversed and the cause remanded. All concur.