JAMES A. ARBUTHNOT et ux., Respondents, v.
BROOKFIELD LOAN AND BUILDING ASSO-
CIATION, Appellant.

**Kansas City Court of Appeals, February 16, 1903.**

1. **Building and Loan Associations: USURY: COMPETITIVE BID-DING: MINIMUM PREMIUM.** Where a building and loan association has a fixed minimum premium at which it makes loans, such act is in disregard of the statute and avoids its protection against usury.

2. ————: ————: ————: ————. So where there is a fixed minimum premium below which bids will not be received, such act is in the face of the statute directing free and open competition, although competitive bidding is permitted above such fixed premium and the loan is knocked off at the higher premium.

3. ————: ————: ATTORNEY AND CLIENT: PRIVILEGED COMMUNICATION. Where the attorney of an association bids for and secures a loan, he is a competent witness in his action against the association on such loan.

4. ————: ACCOUNTING: CHARGES: ATTORNEY. In an accounting between an association and its attorney on a loan, the former is not entitled to certain fines which were never charged against the plaintiff because of his being the association's attorney.

5. ————: USURY: ACCOUNTING: LEGAL INTEREST: STATUTORY CONSTRUCTION. Usury in a loan avoids the contract as to interest, and the creditor is only entitled to the statutory rate and not the contract rate, the difference between the contract and statutory rate being applied to the principal debt.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Chas. K. Hart* for appellant.

(1)    J. A. Arbuthnot should not have been allowed to testify in this action, as he was the attorney for the

appellant at the time the loan was made, and the facts testified to came to his knowledge as such attorney. R. S. 1899, sec. 4659. (2) The respondents should have been charged with the amount of the fines, with which they were chargeable under the by-laws, shown by the evidence, to the amount of $73.70. The by-law of the appellant, providing for fines, was introduced in evidence and all shares of stock in' associations of this kind are subject to a lien for amount of fines. R. S. 1889, sec. 2810; R. S. 1899, secs. 1364-1366. Endlich on Building Associations (2 Ed.), secs. 415, 416 and 432, chap. 15. (3) The respondents were not entitled to credit for interest on dues paid by them. Payments of dues are payments on the stock and are not payments on the 'loan. Brown v. Archer, 62 Mo. App. 277; 2 Am. and Eng. Ency. of Law (1 Ed.), p. 639; Price v. Loan Ass'n, 75 Mo. App. 551; Barker v. Biglow, 15 Gray (Mass.) 130; Endlich on Building Associations (2 Ed.), pp. 459 to 465. (4) As the appellant was and is a mutual savings fund loan and building association, it had the right to charge a premium for preference of loan. R. S. 1899, secs. 2812, 2814, 1363 and 1364; Sappington v. Loan Co., 76 Mo. App. 242. (5) The burden is upon the stockholder who seeks to use this by-law as a defense to show that he was injuriously affected thereby. Stiles Appeal, 9 W. N. C. (Pa.) 83. (6) When, as in the case at bar, the premium was fixed by open bidding at a meeting of the board of directors, as contemplated by the statute, and the premium thus fixed is in excess of the amount fixed by the by-law, the existence of such by-law does not render the premium usurious. Loan Association v. Young, 9 W. N. C. (Pa.) 251; Endlich on Building Associations (2 Ed.), sec. 411, chap. 14, p. 380; Thompson on Building Associations (2 Ed.), sec. 191; Maloney v. Building and Loan Ass'n, 57 Mo. App. 384. Appellant submits that the cases in this State, passing on this subject, are not decisive of this case.

*T. M. Bresnehen* and *Harry K. West* for respondents.

(1)    That comunications between an attorney and his client can not be disclosed by the attorney to the prejudice of his client, is a rule of law that can not be controverted, but in a proceeding of this kind, where the attorney for a corporation seeks to have an accounting with the corporation, that he is prohibited from testifying to the details of his transactions involved in the accounting sought to be had, is so novel and unreasonable that respondent declines to notice it further.    (2)    Respondent does not contend that he is entitled to credit for interest on dues paid by him. (3)    As to the point made in the fourth paragraph of appellant's brief, this case is on all fours with the case of Clark v. Savings and Building Ass'n, 85 Mo. App. 388.    (4)    It is evident from this by-law and from the manner in which this loan was made, that it was not the result of free competitive bidding, and the trial court was correct in so holding.    Price v. Empire Loan Association, 76 Mo. App. 557.    (5)    The statute is that when usury is charged, the party guilty of exacting usurious interest "shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commissions or brokerage, or as payment upon the principal, or as interest on said indebtedness."

ELLISON, J.—1.    This is an action in equity whereby it is sought to cancel a note, and deed of trust to secure it, given by plaintiff to defendant for borrowed money.    The plaintiff asked an accounting and offered to pay to defendant whatever sum was found to be legally due.    The trial court found that there was yet due defendant the sum of $777.28 and entered

a decree that upon the payment of that sum to defendant the note and deed of trust should be cancelled. The defendant, claiming more than that sum, has appealed.

It appears that defendant is a building and loan association and that in October, 1891, plaintiff executed his note to it for $2,200. That of this sum defendant retained $583 as a bonus or premium bid for the loan. That he agreed to pay eight per cent per annum in monthly installments and also monthly dues of $11 each month on his certificate of stock as a member of the defendant association.

The loan in this case was made prior to 1895, when the building and loan statute was amended, and is therefore governed by the original statute of 1889. If the loan was made in accordance with the provisions of the latter statute, the defendant has been injured by the decree of the trial court. If, as charged by plaintiff, that statute was disregarded, then the exactions by defendant in the way of premium, interest, etc., were not authorized by law, and being in the aggregate much more than lawful interest, became usurious and the decree of the trial court allowing credits for usurious payments should be affirmed. For we have ruled in a series of cases, beginning with Brown v. Archer, 62 Mo. App. 277, that if a loan was made in the manner provided by statute, it was a valid loan, though the premium, interest, etc., aggregated more than a lawful rate of interest. But that if the statute was disregarded it would not protect the loan from the charge of usury.

The defendant had an established, fixed, minimum premium of sixteen per cent for preference of loans. The statute referred to (sec. 2812) required that the loan should be made at competitive bidding of premium for preference of loan in open meeting and we have held that where the association had a fixed minimum premium at which they made loans, that that was an

act in disregard of the statute and avoided its protection. Brown v. Archer, supra; Moore v. Building & L. Assn., 74 Mo. App. 468; Barnes v. Building & L. Assn., 83 Mo. App. 466; Clark v. Mo. Guar. Assn., 85 Mo. App. 388; Fry v. Savings Assn., 88 Mo. App. 289; Cover v. Building & L. Assn., 93 Mo. App. 302.

2.   That statement of the law is not questioned by defendant.   But it seeks to distinguish this case from those just cited by the fact that, while there was a minimum premium of sixteen per cent for preference of loan fixed by one of its by-laws, yet, in point of fact, there was competitive bidding, in open meeting, at which the loan in controversy was bid off at twenty-five and one-half per cent.   And that since the loan was bid off by competitive bids for a per cent greater than the premium fixed by the by-law, the fact that there was a fixed premium worked no harm and ought not to be allowed to affect the validity of the loan.   The facts, as disclosed by the record, were these:   Defendant had a by-law declaring that the premium to be received for preference of loans should not be less than sixteen per cent.   That when this loan was let to plaintiff the secretary of the association, who cried the bids, opened the auction by announcing that no bid would be received under sixteen per cent.   That thereupon bids were made over that rate until the loan was sold to plaintiff at twenty-five and one-half per cent.

In our view, that manner of letting the loan gave effect to the objectionable by-law and was in the face of the statute directing free and open competition. The by-law was enforced by the opening declaration of the secretary. The bidders were compelled to bid more than sixteen per cent and while there was competition above that rate, there could be none under that rate. It is manifest that there can be no fair and free letting of a loan, when a certain rate is determined upon beforehand under which no loan would be made. The by-law arbitrarily fixed upon sixteen per cent as the

rate, unless the association could get more. The by-law itself fixed a usurious rate and being fixed, it was not protected by the statute. When the association adopted the by-law and enforced it through the act of its secretary, it was demanding usury in a manner unauthorized and, therefore, it placed itself outside the protection of the statute; and the fact that it got more usury than it demanded in the by-law does not relieve the transaction of its illegality. We are cited to Endlich on Building & Loan Associations, section 411, but the citation does not support defendant. That author says that if the premium exacted was the result of fair competition, without reference to the illegal by-law, "no bid being refused because below the established minimum, nor raised for the sole purpose of covering it" the borrower has no cause of complaint. But in this case, while no bid was refused for the reason that it was below the rate named in the by-law, yet the bidders were advised, at the outset, that they would not be permitted to bid below that rate.

3. It seems that plaintiff was the attorney for defendant when the loan was made to him. For that reason defendant objected to his testifying in the case. The objection was not well taken. The plaintiff could not be cut off from the right to testify to matters relating to the transactions concerning this loan. As to this loan, defendant and plaintiff were acting in antagonism. They were parties in-opposing interests and did not occupy the position of attorney and client.

4. Defendant claims that there were fines for delinquent payments owing by plaintiff which should have been charged against him by the court. The evidence disclosed that these had not been charged against him. That through a series of years, no mention was made of fines, and none were ever collected because of plaintiff being the attorney of the association. The mention of fines was a mere afterthought and the court properly refused to consider them.

5.   Defendant also claims that it has been improperly charged for interest on dues.   A calculation shows this was not done in point of fact.

6.   The note in question drew upon its face eight per cent interest.   The trial court, having found the transaction tainted with usury for the reasons herein set out, refused to allow defendant the eight per cent; but, instead, allowed six per cent.   In this State, six per cent is the legal rate, but the rate may be made eight per cent by contract.   And so the former is generally termed the legal rate and the latter the contract rate. The statute (sec. 3709, R. S. 1899) is:   "Usury may be pleaded as a defense in civil actions in the courts of this State, and upon proof that usurious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payment, shall be credited upon the principal debt, and all cost of the action shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commissions or brokerage, or as payment upon the principal, or as interest on said indebtedness."

Defendant claimed at the argument that as eight per cent may be legally contracted for, the statute, when using the expression, "with legal interest" meant the interest stipulated in the contract, provided it was within the rate which could be legally contracted for. We think not.   The statute, in using the expressions "legal rate of interest" and "with legal interest," meant the statutory rate which obtains in the absence of contract.   Usury avoids the contract as to interest and the statute disposes of it by giving the creditor the statutory rate and applying the overplus towards the payment of the principal debt.

By inadvertence of court and counsel, in directing the calculation of what should be allowed the creditor in

Brown v. Archer, 62 Mo. App. 277, the contract rate was used instead of the legal rate. The matter passed unmentioned and unobserved and the trial court did right in ignoring that calculation here.

The judgment will be affirmed. All concur.