NATCHEZ BUILDING & LOAN ASSOCIATION *v.* JAMES G. SHIELDS.

1. BUILDING AND LOAN ASSOCIATIONS. *Interest on premium. Usury. Settlement.*

   Although a borrowing member of a building and loan association obligates himself to pay the full amount bid off by him, including the premium on the loan, yet, if his contract only requires the payment of a lawful interest on the amount of his bid, and afterwards, in settlement with the association, he pays less than ten per cent. per annum on the actual amount received, he cannot complain of usury, or that interest was charged on the premium.

2. SAME. *Interest on premium. Voluntary settlement.*

   In such case, where the borrowing member, on withdrawing from the association, with full knowledge of all the facts, makes a voluntary settlement, in which he is allowed as unearned a part of the premium bid by him, together with his share of the profits, including in such profits interest afterwards alleged by him to be usurious, he cannot recover, as usurious or illegal, interest charged him on the premium.

FROM the circuit court of Adams county.

HON. W. P. CASSEDY, Judge.

In January, 1889, appellee, Shields, became a member of the Natchez Building & Loan Association, subscribing for six shares of its capital stock in the ninth series. The shares were of the par value of $200 each, and, under the contract, he was to pay one dollar on each share per month until the same should mature, in view of the experience of the association, it being estimated that the shares would mature in one hundred and twenty months. The charter of the association conferred upon it the powers usually pertaining to such associations. Only share-holders are allowed to borrow its funds. Loans were made at intervals to share-holders who bid the highest premium, the successful bidder becoming a borrower upon pledging his shares of stock and executing a trust-deed on real estate as security. In March, 1889, shortly after Shields became a stockholder, at a com-

petitive bidding, he became a borrower from the association. He bid off $1,200 at thirty-two per cent. premium, being $384. Deducting this, he received in cash $816, and gave his obligation to pay the $1,200, " together with lawful interest." He also pledged his stock as additional security. He continued in the association for three years and eleven months, during which time he paid, in accordance with the contract, one dollar per share, or six dollars per month, besides a total of one dollar and twenty cents fines for failure at different times to pay promptly. In January, 1893, in accordance with the charter and by-laws, he withdrew from the association, when a settlement was made, as follows:

The association charged him with the par value of the six shares or
    nominal amount of loan _____$1,200 00
And credited him with forty-eight months' dues, at $6 per
    month_____ $288 00
Returned premuium, being $\frac{72}{120}$ of the premium he had bid,   228 00
Sixty-five per cent. of the profits of the ninth series, as
    shown by the last audit. _____ 28 25—   544 65

    Balance due by Shields _____$   655 35
Fines for non-payment of dues _____    1 20
Interest for December _____    6 00

    Amount paid by Shields on withdrawal _____$   662 55

Subsequently, he claimed that he had paid an excess of interest, and demanded of the association to refund him the six per cent. interest he had paid during his membership on the $384 premium, the amount demanded being $88.32. Payment being refused, he brought suit for this amount in a justice court, and recovered judgment. On appeal, there was a trial in the circuit court, resulting in a peremptory instruction for plaintiff. Verdict and judgment accordingly. Defendant appeals.

The opinion contains such further statement of the facts as is necessary to an understanding of the questions decided.

*T. Otis Baker* and *Nugent & McWillie,* for appellant.

Even where ten per cent. per annum is charged, provisions

requiring payments quarterly or monthly do not offend the statute against usury. This is the general rule, and it is certainly applicable to building and loan contracts. Thompson on Building Associations, p. 104, § 4.

In this case, no usury was stipulated for on the face of the contract, and none was, in fact, charged or collected. Six per cent. interest on the $1,200 for the period of the loan only amounts to interest at the rate of 8.8 per cent. on $816, the amount actually received by appellee.

The obligations that he assumed as a borrower did not displace his obligations to pay dues already incurred, and the payment of those were stock payments, and not appropriable to the principal of his debt. 2 Am. & Eng. Enc. L., p. 628, note 6; *Ib.*, p. 639, and authorities cited.

There was no usury, and plaintiff could not recover, particularly after a final settlement, in which both parties acted with full knowledge of all the facts.

Had the charge not been exactly in accordance with the contract, plaintiff could not, after a *bona fide* settlement, recover any excess paid over the contract rate, unless usury was shown. The cases where settlements have been overturned on account of excessive collections of interest are those in which the excess was usurious.

It is only for an alleged excess of interest that plaintiff sues. The other features of the settlement are not called in question. Plaintiff's connection with the association, up to the time of his settlement and withdrawal, was an advantageous and profitable one to him. There was no usury, hardship or oppression in the transaction, and the parties have had a full and amicable settlement.

*Ernest E. & G. M. Brown*, for appellee.

The peremptory instruction for plaintiff was correct. The trust-deed stipulates for lawful interest on the whole sum bid for, and he was required to pay, in addition to $6 monthly dues, $72 a year interest, which is six per cent. on the $1,200,.

whereas, he only received $816. In *Sullivan* v. *Loan Association*, 70 Miss., 94, it was distinctly decided that interest could only be charged on the amount actually loaned, and not on the premium. See also Endlich on Building Associations, § 398.

By actual calculation, striking yearly balances, appellee paid nearly fourteen per cent. for the money loaned. This charging of interest on the premium was even in violation of appellant's charter, § 2 of which provides for "monthly interest and payments on loans and advances." These words mean the amount of cash actually given the borrower. Endlich, §§ 384, 385.

The sum-total of the credits allowed appellee is less by $127.35 than the premium charged him. These credits for return premium and profits were allowed in compliance with the by-laws, and in no way prevents the charging of interest on the premium from being illegal. In the Sullivan case, the by-laws allowed the borrower to share in the profits. Endlich, in §§ 399, 400, speaks of the justice of remissions and discounts on premiums bid where a party has not been a borrower for the whole period necessary for stock to mature; but he in no way intimates that such remission modifies the doctrine stated in § 398, that interest on the premium cannot be charged or collected.

WOODS, J., delivered the opinion of the court.

As matter of fact, the appellee paid less than ten per cent. per annum interest on the amount of money actually advanced or loaned to him. His contract, most unfavorably construed for appellant, required the payment of lawful interest on the amount of his bid; the record shows that he finally paid less than lawful interest on the sum really received by him. It is difficult to conjecture where any claim of usury can be tenably planted.

But, independently of this, the appellee, on repaying his loan and withdrawing from the association, voluntarily made

the settlement plainly shown in the record, and this he did with full knowledge of all the facts.   In this voluntary settlement he made no mistake of fact; he has received subsequent enlightenment of law, as he now supposes.   In this voluntary settlement, made with his eyes wide open, he received seventy-two one-hundredths of the premium bid by him, which was returned as unearned, and he received his share of all the profits made by the association during his membership and while enjoying the money loaned him, and these profits embraced his ratable part of all interest paid by all borrowing members, himself and others.   In that settlement he took as his own his part of all interest now supposed to have been usurious, and yet holds it.

A·peremptory instruction for defendant should have been given.

*Reversed and remanded*.