EMMA F. COVER et vir., Respondents, v. MERCANTILE MUTUAL BUILDING AND LOAN ASSOCIATION, Appellant.

**Kansas City Court of Appeals, March 3, 1902.**

1. **Building and Loan Association: COMPETITIVE BIDDING: USURY.** Under the former statute, where the amount of premium that the borrower should pay for the loan was not determined by open competitive bidding and such premium added to the interest was greater than the legal rate, the transaction was usurious.

2. ———: ———: **SETTLEMENT: ESTOPPEL.** Where a member of a building and loan association who has agreed to pay usury makes a settlement with the association and pays the usury participating in the profits of the institution arising from like usurious contracts, he can not assail such settlement for usury.

3. ———: **PREMIUM: FIXED BY BY-LAWS: USURY.** Under section 1362, Revised Statutes 1899, a building and loan association is authorized to establish a fixed premium to be paid for loans without competitive bidding and where such premium has been so fixed and the member borrows at a less premium, he can not assail the transaction for usury even though such premium added to the interest was greater than the legal rate.

4. ———: **FIXED PREMIUM: EXTORTIONATE CHARGE.** Where an association fixes its premium by by-laws, it is open for the courts to determine whether such premium is extortionate, and it is held that a premium of forty cents per hundred dollars in addition to interest at seven and one-fifth per cent is not extortionate in view of the objects of the association and the disposal of the profits thereof for the benefit of the borrowing member.

5. ———: **USURY: FRAUD.** A certain transaction between a member and an association relating to a loan is held to have been free of fraud and without concealment although it was usurious at the time.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED AND REMANDED *(with directions).*

*Webster & Gilmer* for appellant.

(1)   Respondents are estopped to claim there was usury in the Missouri Mutual loan by reason of the settlement and readjustment in 1897, and the credit for the profits earned by their Missouri Mutual stock, which profits arose from the premium paid by them and from like premiums paid by other members.   State ex rel. v. Stockton, 85 Mo. App. 477; Benevolent Society v. Murray, 145 Mo. 622; Quinlan v. Keiser, 66 Mo. 603; Building and Loan Ass'n v. Shields, 71 Miss. 630; Building and Loan Ass'n v. Leonard, 74 Miss. 810; Building and Loan Ass'n v. Woods, 100 Tenn. 121; Milnor v. Ass'n (Tenn.), 48 S. W. 732; Barrow v. Ass'n (Tenn.), 48 S. W. 736; Cox v. Ass'n (Tenn.), 50 S. W. 662; Parker v. Building Ass'n, 46 Ga. 197; Hays v. Ass'n, 124 Ala. 663; State ex rel. v. Branch, 151 Mo. 622; Hensinger v. Dyer, 147 Mo. 219; Reynolds v. Kroff, 144 Mo. 433.

*Neal & Eppstein* for plaintiffs.

(1)   The money must be let at an open and competitive bidding.   Brown v. Archer, 62 Mo. App. 278; Moore v. Ass'n, 74 Mo. App. 468; Price v. Empire Co., 75 Mo. App. 551; Sappington v. Loan Co., 76 Mo. App. 242; Fowles v. Loan Co., 86 Mo. App. 103.   (2)   It is perfectly consistent that a bonus may both be usurious and without consideration. Usury is too great an interest charge, the excess being money paid without consideration, and the converse is true.   The petition states all of the facts and the court under the petition can find either that the $400 bonus was without consideration or it was usurious.   Sharkey v. McDermott, 91 Mo. 647; Greenwood v. Ins. Co., 27 Mo. App. 401.   The Revised Statutes of 1889 was the law in force at the time when this contract was first made with the Missouri Company.   Sec. 5972 of those statutes provided that six per cent should be

the legal rate of interest, in those cases where the contract did not provide for different rates. Section 5973 provided that the parties might agree in writing for the payment of interest, not exceeding ten per cent. Section 5976 provided a forfeiture to the school fund in case of usurious charges. Section 2814 of those statutes at the time of this original contract, provided as follows: "No premium fund or interest on such premiums that may accrue to the said corporation, according to the provision of this article, should be deemed usurious, and the same may be collected as debts of like amount are now collected by law." (3) Estoppel can only exist in those cases where parties by act or conduct have induced another to act to his prejudice. 11 Am. and Eng. Ency. of Law (2 Ed.), 387. There is no record of anything done or said by plaintiffs that could have misled the defendant unless it be the passive and lamb-like quality of non-resistance shown by these people, ignorant of their rights, and mystified by the character of business and the supercilious assumption of superior knowledge on the part of the officers of the company. (4) The statute authorizing the by-law is unconstitutional. This is a very peculiar statute, its provision being that the positive law with respect to method and procedure by these companies may be entirely abrogated by the corporation, by by-laws. This is a very remarkable statute; it is a delegation of legislative power that will certainly not be upheld by the courts. The Legislature alone, can repeal a statute and can not delegate a power to repeal, suspend or abrogate a statute to any person, natural or artificial. McQuiddy v. Brannock, 70 Mo. App. 545; Ruggles v. Collier, 43 Mo. 353; Thompson v. City of Boonville, 61 Mo. 282; Mathews v. City of Alexandria, 68 Mo. 115.

ELLISON, J.—This is an action to cancel two notes and deed of trust securing them, given by plaintiffs to defendant, a building and loan association, on the ground that

they had been paid. For the purpose of an accounting between the parties the matter was referred to a referee. The referee found that plaintiffs had paid the notes in full; and had overpaid in such amounts as to leave due them the sum of $651.10. Judgment was rendered for plaintiffs for said sum and that the notes and deed of trust be cancelled.

The facts necessary to state in order that our conclusions in this case may be understood, are these: In 1889, plaintiffs, who are husband and wife, wanted to borrow $1,600 for the purpose of building. To that end the wife became a member of the Missouri Mutual Loan & Building Association and subscribed for ten shares of stock of $200 each and gave her note for $2,000, with eight per cent interest payable monthly, secured by deed of trust on real estate and the stock. Of this sum she received only $1,600, the balance of $400 being retained by defendant as a bonus or premium bid for the privilege of the loan. Afterwards, in 1893, said association consolidated with or became merged into the defendant company, the latter taking the former's assets, among them the said note and deed of trust executed by these plaintiffs. Plaintiffs paid interest and dues on stock, etc., to the former company up to the time of the consolidation; and thereafter, up to 1897, paid to this defendant. In that year there was an adjustment and settlement between plaintiffs and defendant of said note of $2,000, when it was found, according to defendant's calculation, that plaintiffs were still owing more than $900, and the wife became a member of the defendant association and borrowed of it $900, executing two obligations of $450 each, and each drawing seven and one-fifth per cent, and wherein it was provided in each, that plaintiffs were to pay $1.80 monthly as premium for the privilege of said loan, and $2.70 monthly on dues on stock of membership. There was no competitive bid for the privilege of the original loan of $2,000; but the sum of $400, aforesaid, was named by de-

fendant as an absolute charge for the privilege of the loan. On the settlement aforesaid, plaintiffs were allowed dividends as profits accruing to members of the association; and defendant in its various dealings with other members allowed them dividends and profits at different times. These dividends, or profits, accrued from the earnings of the association and were based on the premiums and interest paid in by plaintiffs and other members.

This general statement of facts omits much of detail set forth by the respective briefs, but it is deemed sufficient for a proper disposition of the legal propositions involved.

The statute in force when the original loan was made was continued in the revision of 1889. It was provided by section 2812 of that statute that building and loan companies should offer loans to members on competitive bidding in open meeting, of premium for privilege of such loan, and by section 2814, that no such premium, whatever the amount, should be deemed usurious. We have held in a number of cases, beginning with Brown v. Archer, 62 Mo. App. 277, that where the premium paid by the borrower is not the result of competitive bidding, and, added to the rate of interest charged, made more than the legal rate, it was usury and not protected by the statute. In this case the premium charged added to the rate charged made the loan usurious. Therefore, but for the settlement which plaintiffs had with defendant in the year 1897, aforesaid, we would hold that plaintiffs were entitled to a credit on the two obligations in controversy for the usury thus paid. Brown v. Archer, supra.

But by that settlement plaintiffs shared in the usury of the defendant, that is to say, as has been already stated, they, as members of the association, accepted profits which accrued to the association from other like usurious contracts. These profits were between two and three hundred dollars, and other like profits were paid to other parties with similar contracts, based partly on plaintiff's contract. In other words, plaintiffs

were parties to whatever wrongs were perpetrated and accepted of the fruits thereof.    It was a mutual concern in which the plaintiffs engaged with others and after having settled with defendant and accepted of the profits accruing by reason of the mutuality of the relationship with other members, they can not now recover back what they have paid since that would, in effect, be keeping to themselves the benefits and profits of the membership accruing to them but taking like profits from fellow-members.    The record shows that profits of the institution, thus obtained, were figured on in substantial amounts, in the accounting had in the trial court.    Plaintiffs, can not now be allowed to question that settlement.    We decided this precise question in State ex rel. v. Stockton, 85 Mo. App. 477.    In addition to the authorities therein relied upon, we cite:    Milnor v. Association, 48 S. W. 472; Barrow v. Association, 48 S. W. 736.    What was said by the Supreme Court of Mississippi in a similar case is so applicable that we insert it here, viz.:    "In this voluntary settlement he made no mistake of fact; he has received subsequent enlightenment of law, as he now supposes.    In this voluntary settlement, made with his eyes wide open, he received seventy-two one-hundredths of the premium bid by him, which was returned as unearned, and he received his share of all the profits made by the association during his membership and while enjoying the money loaned him, and these profits embraced his ratable part of interest paid by all borrowing members, himself and others. In that settlement he took as his own his part of all interest now supposed to have been usurious, and yet holds it."    Loan Association v. Shields, 71 Miss. 630.

This brings us to a consideration of the obligations in suit disconnected from the original loan.    Defendant's bid for the privilege of the new loan was forty cents per share per month, or $1.80 per month for each obligation.    This bid was not a competitive bid in open meeting, and would have been illegal under our former rulings.    Brown v. Archer, supra;

Moore v. Association, 74 Mo. App. 468; Sappington v. Loan Co., 76 Mo. App. 242; Barnes v. Loan Co., 83 Mo. App. 466. But in 1895, the statute was materially amended in this respect. Instead of requiring competitive bids, a fixed premium may now be required to be paid by a by-law of the association. The Act of 1895 was carried into the revision of 1899. It reads as follows: "Sec. 1362. . . . Provided, that any such association may, by its by-laws, dispense with the offering of its money for bids, and in lieu thereof loan or advance its money to members at such rate of interest, or interest and premium, as may be provided by the by-laws, such premium to be paid in gross installments." The defendant association, after the enactment of the statute of 1895, adopted a by-law authorizing the loan of its funds at a premium of sixty cents per share monthly. The loans in controversy, as we have just seen, were made at a premium of forty cents per share and being thus *less* than that authorized by the by-laws, no complaint can be heard from the borrower that the by-law was not complied with. We therefore hold that defendant's demanding and exacting of plaintiffs a fixed premium, without competitive bids, was authorized by the statute aforesaid.

But notwithstanding a building and loan association may now make loans, under the statute aforesaid, on a premium fixed by a by-law and not competed for, and though such premium, added to the rate of interest charged, may exceed the legal rate, yet it will not be deemed to be usurious, unless it be "unreasonable and extortionate." It is so provided by the following section: "No premium, fines or interest or interest on such premiums, that may be charged by or accrue to the said corporation according to the provisions of this article, shall be deemed usurious, and the same may be collected as debts of like amount are now by law collected: *Provided*, that this section shall be no protection against any unreasonable and extortionate charge, fine or interest made by such corporation in its spirit usurious, and oppressive acts, and they

shall be open to investigation and correction by the courts of the State." Sec. 1364, R. S. 1899. This statute is awkwardly worded, but we understand it to mean that though the association may exact a premium, which, added to the interest charged, would exceed the legal rate of interest ordinarily allowed to be contracted for, yet it can not be permitted to so far exceed that rate as to become unconscionable, and whether a contract is, or is not, unconscionable is a matter of inquiry and correction by the courts.

In this case it is not necessary that we place a construction on the statutory term, "and correction by the courts." For, in our opinion, since the statute permits a charge above the legal rate; in other words specially permits the exacting of what would be usury in ordinary contracts, the charge in this case of forty cents per hundred dollars as premiums in addition to interest at the rate of seven and one-fifth per cent, is not so extreme as to be called extortionate or unconscionable, in view of the object of the associations and the disposal of the profits thereof for the benefit of the borrowing member.

It is urged here that plaintiffs were the victims of fraud committed by defendant. The petition charges fraud, or mistake on the part of defendant's officers. There was no evidence sufficient to make out a case of fraudulent imposition on plaintiffs or either of them. Whatever may be said of the large premium exacted in the original loan, there was no fraud or deception about it. The whole affair, including the settlement, seems to have been in the open, without concealment. Neither the referee, nor the trial court made any finding of fraud.

We are not impressed with the suggestion made as to the position of trust claimed to exist between the parties.

Under the pleading the trial court has jurisdiction to finally adjust the controversy between the parties. We will therefore reverse the judgment and remand the cause with directions that, if defendant so elects, the court, taking the pres-

ent obligations of $450 each, disconnected from the original loan, will enter judgment for what balance may be due thereon. All concur.