ELIZABETH CALLISON et vir, Appellants, v. TRENTON BUILDING AND LOAN ASSOCIATION, Respondent.

Kansas City Court of Appeals, January 5, 1903.

1. **Building and Loan Associations: COMPETITIVE BIDDING: USURY: SETTLEMENT.** Where a member of a building and loan association, under the statute of 1889, made a loan at a premium fixed by a by-law without competitive bidding and afterwards settled and adjusted the same, accepting all proper credits including the profits, he thereby waives the claim for usury. (Affirmed on motion for rehearing.)

2. ———: ———: ———. Under the statute of 1889, a building and loan association could protect itself against the usury statutes only by making its loans on a premium determined by open competition of bidders; but under the amendments of 1895, carried into the revision of 1899, the premium may be fixed by by-law without competitive bidding.

3. ———: USURY: STATUTE: UNREASONABLE RATE. Under the Act of 1895, the rate of premiums above the legal rate of interest is left open with power of investigation and correction by the courts, if it is found extortionate, unreasonable and unconscionable.

#### ON MOTION FOR REHEARING.

4. ———: ———: FIXED PREMIUM. Where a building and loan association had a by-law fixing the premium below which loans would not be made, prior to the amendment of 1895, and after that enactment made loans under that by-law without competitive bidding and without readoption of that by-law or reorganization under that statute, the loan so made is not protected from the vice of usury.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED (*with directions*).

*W. G. Callison* and *O. G. Williams* for appellants.

(1)   The original loan made to Mrs. Endicott in 1894, was an usurious transaction.   (2)   The renewal of the original loan by Mrs. Endicott in 1897, and the execution of a new money bond and deed of trust, did not purge the transaction of usury.   (3)   Mrs. Endicott was entitled to relief from the usurious conditions of the original contract, and this plaintiff being her assignee, becomes entitled to the same relief.   (4).  The whole series of transactions, being in violation of the laws of this State, was usurious, unreasonable and oppressive, and the court should have investigated and corrected these wrongful acts of defendant association, by granting an accounting as prayed for in plaintiff's petition.

*Platt Hubbell* for· respondent.

(1) The plaintiff's theory of the case ignores the statute of 1895, page 105. R. S. 1899, sec. 1362. (2) The plaintiff's theory of the case ignores the Covey case giving the judicial interpretation of that statute. Wherever the question has arisen, the Covey case is supported and approved. Zenith B. & L. Ass'n v. Heimbach, 79 N. W. 610; Ass'n v. Fawich, 79 N. W. 847; Manship v. B. & L., 110 Fed. 856; Cumberland B. & L. v. Sparks, 111 Fed. 647.

ELLISON, J.—This is a proceeding in equity seeking to cancel a note and deed of trust securing the same and to restrain a sale under the deed of trust. The ground relied upon by plaintiff is that on the 22d day of May, 1900, she only owed $286 on the loan, when proper credits, including usurious payments, were allowed, and she tendered that amount. Defendant claimed that there was due on that date $341.60, and refused the tender. The result in the trial court was for defendant.

It appears that, in 1894, Mrs. Endicott was a member of the defendant association and borrowed of it $400. At that time the association was governed by the general statutes of 1889 relating to building and loan associations. That statute required competitive bidding in open meeting for premium for loans in order to protect them from usury. It was not had in making this loan and under repeated rulings of the appellate courts of the State the loan was usurious and the illegal payments could, ordinarily, have been forced as credits on the note. Brown v. Archer, 62 Mo. App. 277.

But Mrs. Endicott, in November, 1897, settled and adjusted that loan and made a new loan (the one in controversy) for $400. In this settlement she accepted all proper credits in the association which, being a mutual organization, included the profits to which, as a

shareholder, she was entitled. The case, so far as concerns the first loan, is therefore governed by those of State ex rel. v. Stockton, 85 Mo. App. 477, and the recent case of Cover v. B. & L. Ass'n, 93 Mo. App. 302. Mrs. Endicott made various payments under the new loan until in 1899, when she sold to plaintiff the land in controversy and plaintiff succeeded her in membership in the association. Plaintiff then continued payments until in 1900, when a difference of $55.60, in what was considered due, arose and plaintiff made the tender as above stated.

This proceeding seems to have originated as though the controversy was governed by the statute of 1889, chapter 42, article 9. Under that statute, as above stated, and has been many times decided, organizations like defendant could receive interest and premium for privilege of the loans, which, together, would go beyond the rate of interest permitted by law in ordinary contracts. Te secure such extraordinary privilege it was necessary to make the loan on a premium determined by open competition of bidders. But in 1895, two years before the present loan was made, the Legislature saw fit to make very material changes in the former statute, and that change has been carried forward into the revision of 1899, chapter 12, article 10. (It was shown without objection that defendant was acting under this statute.) It is not for the courts to pass upon the policy of this change, much less to refuse to obey it. By this last statute loans can be made at a premium named in a by-law without competitive bids; in other words, on what is termed a fixed premium. In the Cover case, above referred to, we decided that though a premium thus fixed, added to the regular interest charged made a rate greater than the highest rate allowed by law in ordinary contracts, it was protected by the statute, provided only, that it was not "unreasonable and extortionate." Section 1364.

But we are asked to qualify, or rather to wholly change our construction of the statute in the Cover case. It is urged upon us with seeming earnestness, that the statute did not intend to authorize these associations to receive sums which would in any case aggregate above the highest rate of interest in ordinary contracts. Such construction would be in the face of the express words of the statute (section 1364) wherein it is declared that no premium, fines or interest, or interest on such premiums charged as provided in "this article" shall be considered usurious; and the same may be collected as any other ordinary debt: Provided, that the statute should not be construed as protecting an unreasonable, extortionate and oppressive charge. The statute thus says, in terms, that usury may be charged, but that it must not be so great usury as to become extortionate, unreasonable and unconscionable.

In the Cover case we held that a rate of four per cent above the rate permitted by law was not extortionate, considering the statute and the mutual character of the association. What would be an extortionate and unconscionable rate of usury has been left open by the statute, with power of "investigation and correction by the courts." The effect of the statute as to building and loan associations is to except them out of the general statute as to usury. And it is not the only instance to be found; thus, as to chattel mortgages, see section 1934; and as to pawnbrokers, see section 8858; Hilgert v. Levin, 72 Mo. App. 48.

No reason has been made to appear which would authorize us to interfere with the judgment and it is consequently affirmed. All concur.

OPINION ON MOTION FOR REHEARING.

ELLISON, J.—On further consideration we remain satisfied that plaintiff has no right to disturb the settlement and adjustment of the first loan.

But as to the new loan, the one in controversy, we feel that we were not justified in stating that it was shown that defendant was doing business under the statute of 1895. Defendant's secretary, four years after the new loan was made, testified as follows: "Question: Your association does business under what law, what statute? Answer: Statute of 1895." This being unobjected to and uncontroverted by plaintiff, might be considered sufficient to show that at the time the witness was testifying the association was carrying on its business under that law. But it was not evidence of how it was conducting its business when the loan was made.

The new loan was not made by competitive bids, but for an arbitrary premium fixed by a by-law of the association. This by-law was adopted long prior to the law of 1895 and was therefore void when adopted, and there is nothing in the record to show that the association ever re-enacted a law of like nature after the statute of 1895 became effective. There does not seem to have been any attempt to reorganize the association as contemplated by the Laws of 1895 (section 1375, Revised Statutes 1899), either by formal action as specified in that section, or, as just stated, by enactment of a by-law under authority of that and other sections of that law.

The result is that the new loan was not made under the privileges given by the Laws of 1895 and is not protected from the vice of usury. Plaintiff is therefore entitled to an accounting, in which she will be credited for all payments in excess of six per cent, the legal rate of interest. The motion to set aside our judgment of affirmance is sustained and the judgment of the trial court is reversed and cause remanded, with direction to make the accounting between the parties as herein indicated and render the proper judgment thereon, with the costs against the defendant. All concur.