JAMES W. CLARK, Respondent, v. MISSOURI GUAR-ANTEE SAVING & BUILDING ASSOCIATION, Appellant.

Kansas City Court of Appeals, November 5, 1900.

1. **Building and Loan Association:** COMPETITIVE BIDDING: USURY: MINUTES: ACCOUNTING. Where it is simply understood and agreed between the borrowing stockholder and the association, that the former is to have the loan applied for at a certain premium—not as the result of any competitive sale but mere consent,—the letter and spirit of the statute is violated and the transaction is usurious, and the minutes of the board of the association to the contrary, is of little value; and on an accounting such premium will be credited as interest on the debt.

2. ———: ACCOUNTING: STATUTE: INSOLVENCY. Although it may be the usual intention not to collect the debt at all but to let the association run its course and cancel the mortgage with the borrower's dividends upon his shares, the statute gives the shareholder the right to repay his loan at any time, and he may compel an accounting for that purpose, in which, he will be charged with the full amount of the loan and of dues, interest, premiums and fines remaining unpaid and be credited with the withdrawal value of his share; and the balance shall be received by the association in discharge of the loan.   The method of accounting in cases of insolvency distinguished.

3. ———: COMPETITIVE BIDDING: EVIDENCE: AGENT'S DECLARATIONS. The declaration of agents placing stock and loans are competent evidence to show the method of business and as to whether competitive bidding was required.

Appeal from the Linn Circuit Court.—*Hon. J. P. Butler,* Judge.

AFFIRMED.

*James Hayward* and *Morton Jourdan* for appellant.

(1) The loan to plaintiff was not usurious because made to him in strict compliance with the statute of Missouri. R. S. 1889, sec. 2812; Laws 1895, p. 108, secs. 7 and 9; Brown v. Archer, 62 Mo. App. 290; Hughes v. Association (Tenn.), 46 S. W. Rep. 362; Eng. & Tr. Co. v. Donovan, 147 Mo. 622. The application and written bid and the action of the board of directors show a full compliance with the law. . (2) The alleged by-law fixing the minimum premium was *ultra vires,* of no legal effect. Bertche v. L. & Inv. Ass'n, 147 Mo. 343. Plaintiff can claim no usury or prejudice because his bid was in excess of the premium therein attempted to be fixed. Loan Co. v. Shain, 77 N. W. Rep. 1006; Thornton & Blackledge on Law of B. & L. Ass'n, sec. 229; Albright v. LaFayette B. & L. Ass'n, 102 Pa. St. 411. (3) The debt was not due, and plaintiff was therefore not entitled to an accounting. Brown v. Archer, 62 Mo. App. 291; Fisher v. Patton, 134 Mo. 32. He was not entitled to an accounting, for his stock had not matured. Bertche v. L. & Inv. Ass'n, 147 Mo. 343; Sweeney v. B. & L. Ass'n (Tex.), 26 S. W. Rep. 292; Abbott v. B. & L. Ass'n, 85 Tex. 220; Laws 1895, p. 105, sec. 15. (4) The testimony as to the declarations, statements and agreements of Rusk was clearly illegal, incompetent and prejudicial, and this judgment should be reversed, because of this testimony. Williams v. Edwards, 94 Mo. 451; Lumber Co. v. Kreeger, 52 Mo. App. 422, and cases cited; Tracy v. Iron Works, 104 Mo. 199, and cases cited.

Clark v. Mo. Guar. Sav. & Bldg. Ass'n.

*Johnson & Bresnehen* for respondents.

(1)    The loan to Clark was not made according to the laws of Missouri governing loan associations, the trial court so found, and the premium paid was therefore usurious. R S. 1889, sec. 2812; Brown v. Archer, 62 Mo. App. 277; Moore v. Building Ass'n, 74 Mo. App. 468; Price v. Loan Ass'n, 75 Mo. App. 551; Barnes v. Loan Ass'n, 83 Mo. App. 466; Miller v. Loan. Ass'n, 83 Mo. App. 669. (2)    Defendant was shown to be solvent and a going concern, and plaintiff was therefore entitled to an accounting, and to have the value of his stock, together with the usurious payment called premium, credited on his loan, as the trial court did in this case.    Price v. Loan Ass'n, 75 Mo. App. 551; Moore v. Loan Ass'n, 74 Mo. App. 468; Brown v. Archer, 62 Mo. App. 277; Barnes v. Ass'n, 83 Mo. App. 466.    (3)    Rusk and Torrence were the local agents of defendant in Brookfield, soliciting business, circulating literature and advertising matter, and selling stock for defendant, and their statements and representations as to the terms upon which the defendant would loan money, together with the literature furnished plaintiffs, was competent as tending to show defendant's method of doing business, and whether or not competitive bidding was contemplated or required by defendant in loaning its money.    Moore v. Loan Ass'n, 74 Mo. App. 474; Barnes v. Loan Ass'n, 83 Mo. App. 466; Miller v. Loan Ass'n, 83 Mo. App. 669.

SMITH, P. J.—The plaintiff, James W. Clark, was the owner of ten shares of the par value of one hundred dollars each in the capital stock of the defendant, a building and loan association organized under the statutes of this state.    On June 15, 1891, the plaintiffs borrowed from the defendant one thousand dollars and to secure the payment of which the

plaintiff, James W. Clark, pledged as collateral his said shares of stock.   As a further security the plaintiffs executed a deed of trust on certain real estate owned by them and situate in the city of Brookfield.

The plaintiff, James W. Clark, purchased his said shares of stock of one E. M. Rusk, who was the defendant's agent engaged in selling its stock.  Rusk told the said plaintiff that it was understood when one bought stock in the defendant that he could borrow whatever amount he wanted on such stock from $100 to the full face value of it; that the said plaintiff informed Rusk that he wanted to borrow $1,000. Rusk thereupon told him if he borrowed from defendant he would have to pay $5 premium, $5 on the stock and $5 on principal each month, or $15 per month for one hundred months; and at the end of this period defendant would give plaintiffs their title clear.   A few days after the purchase of the stock of Rusk, the plaintiffs made application for the desired loan to one Terrence, who was engaged in business for the defendant and who "wrote stock and got loans."   Torrence told the said plaintiff that he had stock in the Brookfield B. & L. Association as well as in the defendant and that the former was better for the investor and the latter for the borrower, for in the latter "you know what you are buying;" that "you would pay for the amount you desire to borrow, $5 on principal, $5 on interest and $5 on premium each month," while in the former it was different; "you bid and take the amount of your bid from the amount you borrow."   The plaintiff testified that he never heard of any thing of any bidding at all.

The plaintiff received a little book entitled "Catechism," which purported to have been issued by defendant and in which appeared the following:

"Q.   On what terms is the money loaned?   A.   $1.50 per month for each $100 borrowed.

"Q.   And is this all interest?   A.   No; it includes the payment of principal, interest and premium.

"Q.   How is the privilege of borrowing decided?   A. Application for loans can be made at any time and are filed in order in which they are received and acted upon in regular term, and if the securities offered are sufficient and the abstract shows a good title, the applicant is entitled to the next loan.   Each and every member who takes stock is entitled to a loan of the face value of the stock in accordance with the above terms.

"Q.   How would a member have to proceed to get a loan?   A.   Simply write to the home office requesting it. Upon receipt of the same a note would be sent to the member for signature and when returned with stock certificate endorsed, a check would be furnished."

In the application for the loan the said plaintiff agreed to pay six per cent interest per annum on the loan and six per cent per annum on the amount loaned as a premium for the preference of loan, but both interest and premium to be payable monthly.   According to the defendant's records the application was favorably considered by the defendant's board of directors on June 20, 1891.   The minutes of the meeting state:   "The association having funds on hand to loan and the following named persons having offered sufficient security, and being the best and highest bidders for preference and priority of the loans, were allowed the amount set opposite their names subject to the approval of their abstracts of title by the general attorney."   Then follows the names of four applicants including the said plaintiff.

In the obligation of plaintiffs for the loan the plaintiffs agreed to pay the following sums on the twentieth of each month for one hundred months, viz.: monthly dues, $5; interest on loan, $5, and $5 premium for preference of loan, making a total of $15.   This obligation was incorporated in

the deed of trust which was conditioned upon the prompt payment of said several sums. That the plaintiffs continued to make the monthly payment of said several sums until June 20, 1899, and that during that time plaintiffs paid defendant $465 in monthly dues, $460 interest and $460 in premiums. The plaintiffs thereupon refused to make further payments and demanded of defendant the discharge and release of said note and deed of trust and at the time offered to surrender the said stock certificate releasing and surrendering all their interest therein; but defendant refused to cancel said note and deed of trust and refused to discharge plaintiffs and their property therefrom except on the payment of the sum of three hundred dollars in addition to the amounts previously paid by plaintiffs on said loans, etc. The defendant claimed that the transaction was not tainted with usury and that the plaintiffs owed the defendant the difference between the amount of the loan and the withdrawal value of the stock.

This action was thereupon brought for an accounting and that the said stock certificate be cancelled and that plaintiffs be credited with the value thereof, and that defendant be required to credit the plaintiff's note with all proper credits, including the unlawful and usurious interest charged and taken by defendant, and that the said deed of trust and note be declared adjusted, satisfied and cancelled, and for judgment for $200 overpaid, etc. The cause was submitted to the court and the issues were found for the plaintiffs.

In the statement of the account the court allowed the plaintiffs credit for the usurious payments and found that the reasonable value of plaintiffs' stock was four hundred and seventy-six dollars and twenty-five cents and that in the accounting such value be credited to plaintiff. And that after crediting plaintiffs with the payments of interest and pre-

miums and allowing them the reasonable value of said stock there was due plaintiffs on account of said transaction and overpayments made the sum of eighty-seven dollars and sixty cents. The decree was that the note and deed of trust be cancelled, set aside and satisfied and that the plaintiffs have judgment for the amount of said overpayment.

From this judgment the defendant has appealed and urges as one of its grounds for reversal that the evidence which in part we have already stated shows that the loan was made in the manner required by the statute and therefore the monthly premium bid by him was lawfully exacted.

The defendant's agent with whom the plaintiffs negotiated for the loan told the plaintiffs, as an inducement for them to borrow of the defendant, that the defendant was a better association for a borrower than the Brookfield Association for the reason that when one borrowed from the former he knew in advance what he would have to pay for the loan while in the latter he could not for he would be obliged to submit to competitive bidding. This agent illustrated the manner in which the defendant transacted its loan business by telling him that if he borrowed one thousand dollars, he would have to make monthly payments of five dollars for dues on stock, five dollars on interest and five dollars on premium. In the "Catechism," which was part of the advertising matter which was circulated by the defendant for the purpose of gaining favor with the public and thereby extending its business, was to be found the explicit declaration that the terms on which it loaned money was one dollar and fifty cents per month on each one hundred dollars borrowed, and that this included *principal interest and premium;* and that each member taking stock was entitled to a loan to the face value of his stock in accordance *with the above terms* if the securities offered are sufficient and the abstract showed a good title. Accordingly, the plaintiff sent in to the

home office of defendant an application for a loan agreeing to pay the interest and premium which the defendant's agent and literature informed him was required in order to receive the desired loan.

The plaintiff, James W. Clark, resided in Brookfield and was not present in person or by agent at the meeting of the directors of defendant when the loan was awarded the plaintiffs. He testified that he never heard of any competitive bidding for the loan. The conclusion is irresistible that the premium which was exacted of the plaintiffs was not fixed by the free and open competition between the borrowing stockholders but by the arbitrary rule of the officers of the defendant. The case here is one where it was simply understood and agreed between the plaintiffs and defendant that the former were to have the loan applied for at a certain premium, not the result of any competitive sale but of mere consent between the parties thereto. The so-called premium was in fact a part of the price named by the defendant to be paid by plaintiffs for the use of the money. The assent of the plaintiffs to pay the price required did not make them "bidders" within the meaning of the statute. If the defendant's agents represented to the plaintiffs that the defendant would make them the desired loan of the one thousand dollars for one hundred months and would exact during that time the monthly payment of $5 for dues on stock, $5 for interest and $5 for premium without requiring or permitting any competitive bidding for the right of preference of loan, and that thereupon the plaintiffs' application was made accordingly and so accepted by the defendant, as we are persuaded was the fact, then how can it be said that the plaintiffs' bid for and secured the right of precedence in taking the loan made to them at a competitive sale of such right, or that the premium was not fixed by an arbitrary rule rather than by the free and open competition between borrowing stockholders?

If the plaintiffs knew, as they certainly did, the precise amount of the monthly interest and premiums they would be required by defendant to pay on the desired loan before they applied for it, how can it be contended that the premium exaction for the loan was not an arbitrary one?

It is clear to us from the evidence that the truth was as the defendant's agent represented to plaintiffs: that no bidding was required of the borrower by defendant as a condition precedent to making a loan, and that all that was required to obtain a loan was an offer, accompanied with good security, to pay one dollar and fifty cents per month on each one hundred dollars of the loan without reference to any competitive bidding therefor. These were the terms upon which the loan was made to the plaintiffs which we think was violative of the letter and spirit of the statute and therefore usurious. R. S. 1889, sec. 2812; Brown v. Archer, 62 Mo. App. 277; Moore v. B. & L. Ass'n, 74 Mo. App. 468; Price v. B. & L. Ass'n, 75 Mo. App. 551; Barnes v. S. & B. Ass'n, 83 Mo. App. 466; Miller v. B. & L. Ass'n, 83 Mo. App. 669.

But the defendant insists that the minutes of its board which have already been quoted by us show that the loan made to plaintiffs was the result of competitive bidding. But in the face of the representations of the defendant's agent made at the time of the application to him for the loan, and the terms and conditions on which it proposed to make loans as set forth in its book of "Catechism" and advertising literature, we think that such minutes were entitled to little if any consideration in determining the question as to whether or not the premium exacted by the defendant was fixed according to the provisions of the statute. In view of all the evidence, we must think that the premium was not paid for precedence in obtaining the loan but as part of the price demanded by the lender from the borrower and that the premiums collected on the loan were illegal exactions rendering

the transaction usurious. It follows from this that the plaintiffs were entitled under the statute—section 3709, Revised Statutes 1899 (Acts of 1891, p. 170)—to have the several amounts of premium paid by them credited as interest on their note to defendant.

It is proper in this connection to say that while it is true the by-law of the defendant which was introduced in evidence and was to the effect that each stockholder should be entitled to a loan of the par value of the stock held by him; and on each $100 borrowed should pay forty cents premium per month, is void, it does nevertheless conclusively show that the defendant had a fixed minimum premium for loans arbitrarily fixed by its by-laws and that in its loan transactions it did not follow the statute requiring competitive bidding.

The defendant contends that the plaintiffs were not entitled to an accounting because their "note and stock" had not matured; in support of which it cites several adjudged cases. But by a reference to them it will be seen they are wholly inapplicable since the corporation referred to in each of them was insolvent, while here it appears to be entirely solvent. In Brown v. Archer, 62 Mo. App. 277, Judge Ellison, in the course of his opinion very clearly points out the reasons why a borrowing stockholder in an insolvent loan and building association is not entitled to be credited on his debt with monthly payments on the stock subscribed by him, but we have no such case now before us.

The defendant agreed (1) to perform, as far as it was concerned, the purposes of its corporate existence and to permit the plaintiffs, so long as they did their share, to participate in the benefits and advantages of it; (2) to let them have the use of the money advanced during the continuance of its legal life provided they lived up to the terms of their undertakings; (3) in the meanwhile to receive and invest the

payments made both as dues and as, or in lieu of, interest, in the same manner as those of other members and as part of the common fund; and (4) finally upon the winding up of the concern, to account to them for such proportion of the whole accumulation as might be coming to their share, retaining so much as might be necessary to cover the proportionable share of the losses and expenses and applying the balance to the liquidation of their debt, including the actual advance, interest, fines and premium according to the undertaking and thereupon cancelling the securities. Endlich on Building Ass'n, sec. 125. And this is the understanding although the mortgage may be drawn to stand only for a year. The intention is not to collect at all but to let the association run its course and cancel the mortgage with the borrower's dividends upon his share. Endlich on Building Ass'n, sec. 331; Bertche v. B. & L. Ass'n, 147 Mo. 343; Kupfert v. Ass'n, 30 Pa. 465; Hekelnkaemper v. Ass'n, 22 Kan. 549; Hagerman v. Ass'n, 25 Ohio St. 186; Smith v. Ass'n, 73 N. C. 372.

The statute providing for the organization of building and loan associations contemplates that ordinarily the life of the loan and the stock shall both continue until the association has been wound up. But the statute—section 13, Act 1895, p. 110 (sec. 2813, R. S. 1889), provides that a shareholder may repay a loan at any time and in the settlement of his account he shall be charged with the full amount of the loan originally made to him together with all installments of dues, interest, premium and fines and other sums of money due and remaining unpaid and shall receive and be given credit, if he desires to surrender his shares, for the withdrawal value of the shares pledged and transferred by him as security for said loan and the balance found remaining due over and above such credit shall be received by such corporation in full satisfaction and discharge of said advance. And the

right of a stockholder to have the surrender value of his stock applied as a credit on his debt to the association has been upheld by us in a case similar to this.    Price v. Ass'n, 75 Mo App. 551, and authorities there cited.    The defendant's obection to the right of the plaintiffs to have an accounting is, we therefore think, not well taken.

Rusk and Torrence were the local business agents of defendant at Brookfield, soliciting business, selling stock and circulating advertising matter for it, and we think representations made by them to the plaintiffs as to the terms upon which it would loan money were competent evidence as tending to show its method of doing business, and as to whether or not competitive bidding was required by it in making loans.    The declarations made by these agents were *prima facie* within the apparent scope of their agency and about the business of the defendant concerning such business.

Our conclusion is that the finding of the court was justified by the evidence and its judgment ought to be affirmed, which is ordered accordingly.    All concur.