ELIZABETH WILLIAMS, Respondent, v. WILLIAM H. VERITY, Assignee, etc., et al., Appellants.

Kansas City Court of Appeals, April 6, 1903.

1. **Building and Loan Associations: RELEASING DEED OF TRUST: STOCK: DUES.** The grantor in a deed of trust to a building and loan association is only entitled to a release thereof when he repays the money advanced or when the payment of the monthly dues on his stock and the profits of the business become sufficient to mature such stock.

2. ———: PAYMENT OF DEED OF TRUST: REPRESENTATION: ULTRA VIRES. A building and loan association in determining and representing that it will require so many monthly payments at a given amount to bring stock to maturity and authorize a release of a deed of trust, acts arbitrarily, and its action is *ultra vires*.

3. Corporations: ULTRA VIRES: PLEADING: ESTOPPEL. Where a corporation depends upon the defense of *ultra vires* it should plead the same; but the mere fact that a representation of a building and loan association in regard to the number of payments necessary to mature stock though *ultra vires* is insufficient upon which to base an *estoppel in pais*.

4. Building and Loan Associations: REPRESENTATION OF SECRETARY: ESTOPPEL: KNOWLEDGE. The fact that the secretary of a building and loan association at the time he made certain representations in relation to the number of payments required to mature certain stock, did not know that the property affected was being purchased by another, will not prevent such representation from estopping the corporation, since inquiries in such matters are supposed to be made with a view to business.

5. ———: ———: ———. Plaintiff, with a view of purchasing certain property subject to a mortgage to a building and loan association, inquired of the secretary the amount still due under the mortgage, and he replied that a certain number of payments of a given amount would authorize a release. Plaintiff made the purchase and the payments, which were accepted by the association. *Held*, the association was estopped to deny that a larger sum was required to pay the mortgage.

6. ———: ———: ———: FUTURE MATTER. The rule that a representation in relation to a future matter can not be made the basis of an estoppel has no application in a case like this, since the secretary, answering the inquiry as to the amount of incumbrance on the property, stated the amount required to extinguish the debt which then existed.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig*, Judge.

AFFIRMED.

*A. F. Harvey* and *J. S. Shinabargar* for appellant.

(1)    The trial court erred in applying the doctrine of estoppel to the facts in this case.  A building and loan association can not arbitrarily fix any period when its shares shall mature, and a borrowing stockholder is entitled to have his deed of trust given to secure the payment of his monthly dues released only when his monthly dues paid and the earnings thereon bring his stock to par.  Any contract, agreement, letter or statement to the contrary is beyond the powers of the association and not only an act in excess of its powers but an act that is *ultra vires* and void—an absolute nullity. Caston v. Stafford, 92 Mo. App. 182; Butche v. Loan Ins. Ass'n, 147 Mo. 343; Schell v. Inv. Ass'n, 150 Mo. 103.  (2) There was no evidence upon which the trial court could predicate its finding of estoppel.  It is not shown nor even pretended that Herbert Harris, or any other officer of the association, knew that this property was being bought by John F. Williams, or any other person, or that the statement made in the letter was to be used by Rowley & Owen as a negotiable statement of indebtedness and passed from hand to hand promiscuously.  An act to operate as an estoppel must have been done with the intent that the other party should act upon it.  Sav. Co. v. Horn, 83 Mo. App. 114; 2 Herman on Estoppel, sec. 778, p. 902.  (3) The court erred in its finding "that there is no competent evidence that any of the money paid defendant's assignor was paid on stock."  Payment of monthly dues on stock does not constitute payment on loan.  Caston v. Stafford, 92 Mo. App. 182; Brown v. Archer, 62 Mo. App. 277.

*E. A. Vinsonhaler* for respondent.

(1)  The rule is not, as appellant contends, that estoppel can not be predicated upon an act *ultra vires*. 2 Herman on Estoppel, page 1314, section 1179; Bertsche v. Ass'n, 147 Mo. 360; Smith v. Richardson, 77

Mo. App. 422. (2) Appellants' secretary, when he wrote the letter of May 13, 1896, to Rowley & Owen, was bound to state the facts; and to permit them to deny the truth thereof would work a fraud upon respondent. "An active intent to mislead is not essential to an equitable estoppel." Nor is it necessary that Mr. Harris should have known the object of the inquiry. The Ottumwa Belle, 78 Fed. 643; Guffey v. O'Reilly, 88 Mo. 418; 2 Herman on Estoppel, page 1037.

SMITH, P. J.—In 1891 the Missouri Guarantee Savings and Building Association of Hannibal, a building and loan company, which, for the sake of brevity, we shall hereinafter refer to as the building association, advanced to one Yeaman, a holder of twelve shares of its stock of the par value of $1,200, the sum of $1,200, and the latter executed to the former a deed of trust on lots 1 and 2 in the city of Maryville, and also on his said stock, to secure the payment of the monthly dues, interest and premiums, etc., and which said deed was properly recorded. Some time afterwards, Yeaman sold lot 1, and under an agreement with all the parties the building association divided the loan so that each of said lots became subject to the lien of the deed of trust for only $600. Afterwards, in 1896, the title to lot 2 had been conveyed to one Coulter, who offered to sell the same to John F. Williams, plaintiff's son, for a certain sum, subject to existing incumbrances. Williams was unwilling to close the negotiations with Coulter for the purchase without first ascertaining the exact amount claimed by the building association under its deed of trust, and thereupon he requested Rowley & Owen, who were local collecting agents of the building association, as well as real estate agents, to inquire of said building association the exact amount it would require to secure a release of its deed of trust; and accordingly they wrote to said building association and re-

ceived an answer to the effect: "Your favor of the 10th is received. Mr. Coulter has made 54 monthly payments leaving 46 monthly payments of $9 each, still due. (Signed) Herbert Harris, secretary." Rowley & Owen were fully apprised of the negotiations between Coulter and Williams and the purpose the latter had in seeking the information requested. On receipt of the information thus sought, Williams closed the negotiations with Coulter and accepted a deed conveying the land, subject to the deed of trust lien. Shortly thereafter, he by deed conveyed said lot to the plaintiff subject to the said deed of trust. It appears that said Williams in making the purchase was acting for the plaintiff who desired to acquire the lot. After the purchase, plaintiff made the forty-six $9 payments which were received by the building association.

On December 8, 1900, the building association became insolvent and made a general assignment of its assets to defendant Verity, who claimed that the said deed of trust had not been satisfied in full by the several payments made by the plaintiff and that there was upwards of one hundred dollars still due said building association, and the plaintiff refusing to pay the same after demand, he directed the trustee in said deed of trust, the sheriff, who is the other defendant, to advertise and sell said lot 2 according to the terms of that instrument, and who accordingly proceeded to comply with said direction; and thereupon the plaintiff brought this suit to enjoin the trustee from proceeding with the sale, for a cancellation of the deed of trust, etc.

In the petition it is alleged, amongst other things, that before making the purchase of said lot, plaintiff caused inquiry to be made as to the amount of the debt secured by the deed of trust, and that the building association, through its secretary, knowing the object of such inquiry, informed her that there was due at that time forty-six monthly payments of $9 each, and that she paid the full sum of all the payments so claimed

by the said building association under the deed of trust, and that the said assignee was estopped to claim anything further on that account.

The trial court found (1) that the debt described in plaintiff's petition was paid in full and the defendant, the assignee, was estopped to claim more was due than was claimed by his assignor—the building association—at the time the plaintiff purchased the lot; and (2) that there was no competent evidence that any of the money paid defendant's assignor was paid on stock, and accordingly entered a decree for plaintiff, and from which defendants appealed.

It is contended by the assignee that a building and loan association can not arbitrarily fix any period when its shares shall mature, and that a borrowing stockholder is not entitled to have a deed of trust, given by him to secure the payment of his monthly dues, released until such dues are paid and the earnings thereon bring his stock to par; and that therefore the action of defendant in fixing the number and amount of the monthly dues to be paid on the Coulter stock by the plaintiff to bring such stock to par and to entitle her to a release of the deed of trust as to lot 2, as stated by its secretary in his letter to Rowley & Owen, was arbitrary and in excess of its authority. As was said by us in another case, there are only two ways by which a borrowing stockholder, under the statute of 1889, may be entitled to have released a deed of trust given to secure the payment of his monthly dues, one of which is when he repays the advance, as provided in section 2813, and the other, when the payment of monthly dues on his stock and the profits of the business of the association together become sufficient to mature such stock, or bring it to par. Caston v. Stafford, 92 Mo. App. 182. And when such an association fixes and declares that the payment of any given number and amount of monthly dues will bring the shares of its stockholder in the association to par, it acts in excess of its au-

thority; for whether or not any specified number and amount of monthly payments would bring its stock to par must depend on the earnings thereon, which, of course, is an element of uncertainty in the business that renders it impossible for it, or any of its officers, to determine in advance when its stock, or any part of it, will mature, or, which is the same thing, reach par. It seems clear to us that the act of the building association in determining and representing that it required the payment of forty-six monthly payments of $9 each to bring the Coulter stock to par, and to thereby authorize a release of the deed of trust, was arbitrary and capricious—*ultra vires.*

In the present case the plaintiff in her petition pleaded, in effect, that in consequence of the action of the building association in representing that on making a certain number of monthly payments of a certain amount, the Coulter stock would reach par, that she acted on that representation; and that by reason thereof, the assignee was estopped to claim that it required the payment of a greater amount to bring about that result. If the assignee intended to rely upon the defense that the act of the building association, his assignor, in making the representation was in excess of its lawful authority, and therefore *ultra vires,* it should, as it did not, have pleaded that defense in order to make it available. Warehouse Co. v. Stewart, 70 S. W. 285. But aside from this, was not the representation of the building association, though *ultra vires* the corporation, sufficient upon which to base an *estoppel in pais?* There is no provision of the statute relating to building and loan associations which *expressly prohibits* such associtions or their officers from arbitrarily fixing a time when the shares of any stockholder shall mature, though it does so by necessary implication. It is quite well settled in this State that the defense of *ultra vires* is not open to a corporation when the contract has been fully executed on the part of the other contracting party, and

it is not expressly prohibited by law. Grohmann v. Brown, 68 Mo. App. 1. c. 630; Goodland v. Bank, 74 Mo. App. 365; Chenoweth v. Express Co., 93 Mo. App. 1. c. 195, et seq. And in Thompson on Corporations, section 6016, it is stated that the great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it.

But it is argued that the building asociation ought not to be bound by the representation made by its secretary because it does not appear that he knew or was apprised that the property was being purchased by the plaintiff or her grantor, nor that he (the secretary) ever thought of stating a sum that would mature the Coulter shares at a future time by making a certain number and amount of monthly payments. In Horn v. Cole, 51 N. H. 287, it was said: "If the representations are such, and made in such circumstances, that all persons interested in the subject have the right to rely on them as true, their truth can not be denied by the party against any one who has trusted in them and acted on them. . . . Where a man makes a statement in a manner and under circumstances such as he must understand those who heard the statement would believe to be true, and, if they had an interest in the subject, would act on as true, and one, using his own means of knowledge with due diligence, acts on the statement as true, the party who makes the statement can not show that his representation was false to the injury of the party who believed it to be true and acted on it as such; that he will be liable for the natural consequences of his representation, and can not be heard to say that the party actually injured *was not the one he meant should act.*" In Bank v. Hazard, 30 N. Y. 226, it was said that, "it is not necessary to an equitable estoppel that the party

should design to mislead. If his act was calculated to mislead and has actually misled another acting in good faith and exercising reasonable care and diligence under all the circumstances, that is enough.''

Coal & Ice Co. v. Ottumwa Belle, 78 Fed. Rep. 643, was where the Atlees were contemplating the purchase of the steamer Ottumwa Belle and were informed that the Ice & Coal Company held some demand against said steamer and accordingly wrote to it inquiring if it had any claim against said steamer for supplies furnished. The latter replied that it had an account amounting to about fifty dollars. The Atlees purchased the steamer which thereafter in a proceeding in admiralty by the said Ice & Coal Company was taken into the custody of a United States marshal. The libelant claimed a lien against the steamer for a much larger amount than it had stated to the Atlees—the intended purchasers—was owing to it. The Atlees alleged that the libelant was estopped to make any claim in excess of that stated in its letter to them. The court in its opinion says that the transaction itself was sufficient to advise libelant that the letter was not a mere ''busybody'' inquiry. ''Here was a business firm, in a nearby city, writing a letter which, upon its face, is apparently about a business matter. Is the court to assume that business men write, or that business men receive, such inquiring letters as a matter of mere curiosity, without a desire to use, or a reasonable expectation that use will be made of, the response as a basis for action in business matters? . . . A disclosure by claimants of their reason for writing the letter was not required to impose on libelant the duty of stating the truth in whatever response it made.''

Rowley & Owen were the collecting agents of the building association and were therefore known to it to be business men, and when they wrote the inquiry in respect to the amount of the incumbrance on the property it must have been reasonably expected that use

would be made of its response as the basis for action in some business transaction relating to the property or the incumbrance. In responding to the letter of inquiry, if it chose to respond, it was its duty to state what was true. And as has been seen, it is not essential to an equitable estoppel that a party sought to be estopped by his statements must have intended to mislead. Why did the secretary respond if he did not intend or expect his statement would be relied on? Certainly, he could have had no other thought or expectation.

It appears that the plaintiff's grantor acted upon the statement made by the building association through its secretary, and the latter accepted the payments made in accordance with the statement of its secretary without murmur or dissent. Under the circumstances which the plaintiff assumed and made the payment of said forty-six monthly dues on the Coulter shares, and the building association received the same, we can not see that on principle the case is different than if the said building association had agreed with plaintiff's grantor that if he purchased said property and would make said specified monthly payments that it would treat the Coulter shares as at par on the completion thereof.

The rule that a representation relating to something to be afterwards brought into existence can not be made the basis of an estoppel, has no application here for the reason that the secretary in answering the inquiry as to the amount of the incumbrance then on the property, stated the amount to be such as it would require forty-six monthly payments of $9 each to extinguish it. The debt or incumbrance was then in existence.

We think the evidence fully justified the finding and decree of the court, and accordingly the latter will be affirmed. All concur.