## INTERMOUNTAIN BUILDING AND LOAN ASSOCIATION v. CASPER MUTUAL BUILDING AND LOAN ASSOCIATION.

(No. 1813; January 9, 1934; 28 Pac. (2d) 103)

For the appellant there was a brief and the cause was argued orally by *Mr. M. L. Bishop* of Casper.

For the respondent there was a brief by *S. J. Lewis and R. H. Nichols* of Casper, and *Irwin Clawson* of Salt Lake City, Utah, and oral argument by *Mr. Clawson.*

BLUME, Justice.

The defendant in this case is a mutual building and loan association under the laws of this state, issuing stock of the par value of $200 each, in series, estimated to mature in 96 months by the earnings of the association and the payment on each share of the sum of $1.00 each month. One Howard Miller and his wife became stockholders in the association, acquiring 40 shares of stock in series 9, and on October 27th, 1920, borrowed money from it, giving their note for the sum of $4000 secured by a mortgage on lot 5, block 14, in Butler's Addition to Casper. On May 27, 1921, Miller and his wife borrowed some more money from the association, and gave their note for $4000, secured by a mortgage on the same property above described. The actual amount of money received by the Millers on the two loans was $4600, they bidding a premium each time of 42 or 43 per cent. Under the by-laws of the association, the stock would mature when reaching the value of $6800, 15% of the premium being deducted from the total amount of the notes, and that at that time the loan against it would be paid and cancelled. The payments required to be made on the stock was the sum of $40 each month on dues, and $40 on interest. On January 20, 1927, the plaintiff, the Intermountain Building and Loan Association, purchased the property above described from the Millers, subject to the payments still to be made on the stock above mentioned. Before doing so, plaintiff obtained an estimate of the amount then due the defendant, and was told that the loan on the building could be cleared by a payment of $1440 in cash, or if

paid in installments, by about 17 monthly payments of $80 each. The amount deducted from the purchase price was $1440.00. Plaintiff chose to make monthly payments instead of paying cash, making 19 monthly payments, or a total of $1520. In August, 1928, it asked a release of the mortgage given by the Millers. Defendant then stated that it would require $1500.47 more to pay the loan. About nine months later it demanded $2500 more. These additional payments were demanded on account of the re-valuation of the property and assets of the defendant, and by reason of the fact that large losses had been sustained. The plaintiff brought this action to compel the release of the mortgage. The defendant set up a cross-petition asking the foreclosure of the mortgages above mentioned. The evidence showed that the stock above mentioned was not, at the time of the trial, worth more than the amount of dues paid in, to-wit, $98 per share, a total of $3920, and that it might be worth less. The court found against the plaintiff, and in favor of the defendant, foreclosed the mortgages above mentioned, and gave judgment for the defendant against the plaintiff for $5044, which included $100 attorneys fees. It was shown that the total amount paid in on the loan was $7514. There is some conflict in this regard, since it was stipulated at one place that the total amount paid in was $8920. Taking the $7514, however, as the actual money paid in and adding it to the judgment of $5044, would make the sum of $12,558, as against the sum of $4600 of actual money received on the loan. From the judgment so rendered the plaintiff has appealed. The parties will herein be designated as in the court below. Additional facts will be mentioned later.

1. The plaintiff argues that it was assured that it required a payment of only $1440 to pay off the loan;

that it has paid this amount, and more, and that the defendant should be held estopped from asking any further sum. Numerous cases on estoppel are cited, but we do not find them in point. Two may be noticed. In Capitol Hill Building Association v. Hilton, 1 Mackey 107, the building association sold property mortgaged to it, and at the sale announced that a definite sum was due it. That was paid, and it was held that under these circumstances, the association was bound. In the case of Williams v. Verity, (Mo. App.) 73 S. W. 732, a building association, through its secretary, advised a person who desired to purchase the property, that it would require a definite number of additional payments to pay off the loan, and the court held that the association was bound. This case is the nearest in point of those that are cited. But the facts in this case are not the same. The testimony in this case shows that one Nesbit acted for the plaintiff in inquiring what the amount due on the loan was. He had a talk with Mr. Lowndes, the secretary of the building and loan association, who informed him that the balance due on the loan was $1440; that this amount could be paid either in cash or in monthly payments, and that there would be no particular advantage in paying it off in cash; in other words that no discount would be given if the cash were paid. He admitted that his understanding was that the amount so mentioned was an estimate, and that for that reason he went back a few days later to get a statement in writing of the amount due. He received that from Miss Ford, a clerk in the office of the building and loan association, and is as follows:

Howard Miller, lot 5, block 5, Butler

    Amount of original loan ..................... $4600.00

    Am't paid on Princ. ........... ............. 3160.00

    On Princ. still due ............................. 1440.00

    96 mos.

    79 mos.

17 mos. probable mos. to maturity.

Mr. Nesbit drew the deed transferring the property to plaintiff company. The deed contained a recital of the incumbrance against it in the following terms:

"And that they are free from all encumbrance whatsoever except a balance due the Casper Mutual Building and Loan Association of Casper, Wyoming, which is a loan on 40 shares of No. 9 stock and which is estimated to mature in 17 or 18 months and except special improvements due the city of Casper," etc.

The foregoing clearly shows that the plaintiff company had full knowledge of the fact that the time in which the stock would mature—in other words, the time when the loan would be fully paid—was an estimate only and not a positive statement of fact. It was said by this court in Clause, Admr. v. Columbia Sav. & Loan Ass'n, 16 Wyo. 450,, 462, 95 Pac. 54, where a building and loan association similar to the one at bar was involved, as follows:

"Where a mutual building and loan association provides for maturing its stock by the equal application to all of it, or all of a series, of the monthly dues and profits, as in the case of the association here, the argument that the association is bound by an estimate as to the time of maturity, as to limit the period for payment of dues, has not usually, if ever, been regarded with favor by the courts."

And see further Lake v. Security Ass'n, 72 Ala.
207; Johnson v. Ass'n, 104 Pa. St. 394; Mammer-
slough v. Ass'n, 79 Mo. 80.  In the last cited case, the
court specifically held that information known to the
party receiving it to be nothing more than an opinion
or estimate, if honestly given, will not support an
estoppel.  And this is the general rule. 21 C. J. 1142.
We do not see, accordingly, how the plaintiff here can
invoke the doctrine of estoppel.  Counsel argue that
there was a positive statement of the amount due, and
the further statement that this definite account could
be paid in cash or in  monthly instalments.  But this
is hardly a fair construction of the statement made
by Mr. Lowndes.  But even if part of it were, never-
theless, before plaintiff acquired the property  it
knew definitely that if it chose to pay off the loan
in monthly payments, the amounts required is that
case were estimates only.  It chose that path, and
must be held bound by it.  In so holding, however,
we do not say that the foregoing facts may not be
considered, in connection with other facts, in deter-
mining whether or not the judgment herein was ex-
cessive.

2. Counsel argue that the losses of the defendant
were not properly determined.  But there was no ob-
jection to the testimony by which that was  done.
Counsel further say that the management of the de-
fendant was irregular and injudicious.  Whatever
counsel mean by that, which is difficult to determine,
we do not see how we can give that matter any con-
sideration, since there is nothing in the record  to de-
termine that fact, nor does the point seem to have
been raised in the court below.  Counsel for appellant
further argue that the defendant was insolvent and
that hence there was an impossibility of performing
the contract, and he insists that in such event, the so-
called Maryland rule should be applied, under which

the borrower is charged up with only the amount of money received by him, and is credited with all sums paid by him. 9 C. J. 981-982. If we were to consider this case as of the date of the trial, instead of the date hereinafter mentioned, it may be, in view of the fact that it is doubtful that the company at the date of the trial was able to pay back what had been paid in, that it should be considered insolvent. 9 C. J. 991; Endlich, Bldg. Ass'ns (2d Ed.) 511; Gunbey v. Armstrong, 133 Fed. 417, 427; Burkheiner v. B. & L. Ass'n (W. Va.) 53 S. E. 372, 4 L. R. A. N. S. 1047. In that event the Pennsylvania, the prevalent rule (9 C. J. 982-983), rather than the Maryland rule, should probably be applied. The plaintiff then would, probably, if credit were given for the value of the stock, owe little, if anything. There was, however, no contention in the court below that the defendant association was insolvent at the date of the trial, or that its stock was not more valuable in 1928 than in 1932, and we are therefore in doubt under the facts in this case, especially those hereinafter mentioned, that we should consider the defendant association quite in that light. The only other point, then, which we can consider herein is the assignment of error that the judgment herein was excessive and unconscionable. It appears that if it is correct and is paid, the amount then paid by the plaintiff would be four and one-half times as much as the amount estimated by defendant association to be due when the plaintiff purchased the property in question. That is so startling a fact as to seemingly call for a careful consideration. The judgment herein was rendered as though presenting an ordinary case in which the borrower was in default. It did not take the facts and the equities existing in favor of the plaintiff into consideration, though it should be said that the trial court considered the amount for which judgment was ulti-

mately rendered to be unjust and only yielded upon citation of authorities which we do not consider in point, dealing as they do with an ordinary default. The demand of defendant's counsel that the defendant association should be treated as a normally going concern, that there is no middle ground, and that no deviation from the ordinary rule is permissible, no matter what circumstances call for it, does not appeal to the conscience of the court in attempting to arrive at an equitable result. The plaintiff's default was a default in good faith. It paid all that defendant association had demanded of it in the first place, and therefore on August 13, 1928, telegraphed defendant association for the balance due to obtain a release of the mortgages. It had good reasons at the time to think that nothing more was due Thereupon, on August 13th, 1928, the defendant association demanded $1503.47 more, as shown by a letter from the secretary of the association. That letter was answered by one of August 22, 1928, in which the plaintiff stated that the demand came as a shock and further stated that "we will not pay this $1500 that you ask for. It is impossible and outrageous," and in effect asked for an accounting. These statements virtually constituted a withdrawal from the association. The right to withdraw is distinctly granted by our statute. Section 5218, W. C. S. 1920, the statute then in force, recognizes the right, when the borrower is not in default and when the full amount of the loan is paid. In this case the plaintiff may be regarded as being in the same situation as the borrower. Miller v. Wayne, etc., B. & L. Ass'n, 32 Ind. App. 480;; Gunby v. Armstrong, 133 Fed. 417, 439. It was not in default at the time the foregoing letters were written. It did not, it is true, directly offer to pay the full amount that was due, but it demanded an accounting, and the circumstances of the case clearly

justified it in not making a further payment at that time until such accounting was had. It can hardly be contended that the foregoing statute excludes rules and principles of equity, or that a building and loan association is beyond the pale of such principles. The defendant was not, apparently at least, insolvent at the date of the foregoing letters and it has been said that the right of withdrawal is a fundamental right, evidencing a public policy, and that it is sometimes desirable or necessary. 9 C. J. 938; Sunderheim, Building and Loan Associations (3d Ed.) Sec. 156. We think that the plaintiff comes within these rules. In the case of Reitz v. Hayward, 100 Mo. App. 216, 226, the court said:

"Members are permitted to withdraw their shares instead of being compelled to hold them until maturity, because the privilege has been found necessary to enable associations to secure a sufficient membership. So borrowers are permitted to pay loans at their pleasure, instead of by installments until their stock matures and the loan is thereby discharged in the normal evolution of the association, because the exigencies of business have shown that privilege to be necessary.

And in that case, in which a settlement was demanded, the court figured interest only that time, and held that "the plaintiff was entitled to be credited with the value of his pledged stock at the time he demanded a settlement."

The case of Clark v. Guarantee Sav. & B. Ass'n, 85 Mo. App. 388, involves the application of a statute similar to our section 5218, supra. In that case the plaintiff believed that he had paid all that he should pay, and requested a release of the mortgage, and refused to make further payments. The release of the mortgage was refused. Thereupon plaintiff

brought an action for an accounting. The court held that he was entitled thereto, and granted the relief prayed. In Safety Building and Loan Co. v. Ecklar, (Ky.) 50 S. W. 50, and Dowell v. Safety Building & Loan Association, (Ky.) 54 S. W. 845, it is held that "the date at which the borrower quit paying was a starting point for a new principal, on which interest only is to be computed and added thereto, without further charge for expense; failure to pay being regarded as terminating the borrower's connection with the company as a stockholder, and he thereafter obtains no benefits and shoulders no burdens." We need not go as far as these cases, in holding that a mere non-payment of the required amounts constitutes an end of the old contract and is a new starting point. But more appears in the case at bar; there was an absolute refusal to pay. The reasons for that were based on justifiable grounds; the demand for an accounting was not arbitrary, and we think the facts herein warrant the conclusion, though the suit herein was not brought until 1929, that the plaintiff did not expect to occupy the position of a withdrawing stockholder at the same time that he expected also to have the benefits of continuing to be a shareholder. And while it may be difficult to do exact justice between the parties herein, we think that it may be reasonably attained by considering the letter of August 22nd, 1928, as constituting a withdrawal from the defendant association and as putting an end to the old contract, and by an accounting between the parties as of that date.

The principal of the loan, plus the non-deductible premium, amounted to $6800; the value of the stock, as shown by the testimony and by the printed report of the defendant association, was $18.42 per share, or a total for the forty shares, the sum of $4336.80. It has been held that the report of a building and loan

association is not alone competent evidence of the value of its stock, but that it is bound thereby. The Enterprise B. & L. Ass'n v. Balin, 12 Colo. App. 304, 312. If we take the net amount thus resulting, instead of $1503.47 at that time demanded by the defendant association, leaves $2463.20 as a new starting point. To this should be added interest at the then legal rate, namely seven per cent, to the date of the judgment, for the period of four years and three months, making $732.74. Adding that, and $100 as attorney's fee, to the new principal, makes a total of $3295.94, to which amount the judgment should be reduced as of the date thereof. There are other grounds on which the judgment herein might well be regarded as excessive, but it is unnecessary to consider them here.

The judgment herein is, accordingly, reduced to the amount above specified, and as so reduced, is affirmed. The trial court will enter such additional judgment as may be appropriate. Costs in this court will be taxed to the defendant association, except that no costs shall be taxed for the briefs.

*Affirmed as modified.*

KIMBALL, Ch. J., and RINER, J., concur.